Mortimer A. LEWART, as Executive Director of the National Benefit and Pension Funds for Hospital and Health Care Employees and Nathaniel Hackney, as Director of the Hospital League/District 1199 Training and Upgrading Funds, Plaintiffs,

v.

WOODHULL CARE CENTER ASSOCIATES and Albert Schwartzberg, Sidney Esikoff and Eugene Katz, individually and d/b/a Woodhull Care Center Associates, Defendants and Third-Party Plaintiffs,

v.

David AXELROD, M.D., as Commissioner of the New York State Department of Health; Mark Lawton, as Budget Director of the State of New York; and District 1199, National Union of Hospital and Health Care Employees, RWDSU, AFL–CIO, Third-Party Defendants.

No. 82 Civ. 1019 (WCC).

United States District Court,
S.D. New York.

Oct. 27, 1982.

Sipser, Weinstock, Harper, Dorn & Leibowitz, New York City, for plaintiffs; Donald E. Klein, New York City, of counsel.

Fink, Weinberger, Fredman, Berman & Lowell, P.C., New York City for defendants and third-party plaintiffs; Irwin R. Karassik, New York City, of counsel.

Sipser, Weinstock, Harper, Dorn & Leibowitz, New York City, for third-party defendants; Mary Jill Hanson, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

On February 18, 1982, plaintiffs Mortimer A. Lewart, as executive director of the National Benefit and Pension Funds for Hospital and Health Care Employees, and Nathaniel Hackney, as director of the Hospital League/District 1199 Training and Upgrading Funds (the "Funds") instituted this action against defendants Woodhull Care Center Associates and Albert Schwartzberg, Sidney Esikoff and Eugene Katz, individually, and doing business as Woodhull Care Center Associates (the "Employer") to recover certain payments alleged to be owed to the Funds under the terms of two successive collective bargaining agreements entered into between defendant Employer and third-party defendant District 1199, National Union of Hospital and Health Care Employees, RWDSU, AFL–CIO (the "Union"). The Funds were not parties to either of the collective bargaining agreements, but claim their rights as third-party beneficiaries of those agreements. On April 6, 1982, the Employer filed a third-party complaint against the Union, the Commissioner of the New York Department of Health, and the Budget Director of the State of New York seeking an order declaring the current collective bargaining agreement null and void and indemnification for any liability that the Employer may have to the plaintiff Funds. Subsequently, the claims against the state officials were voluntarily dismissed.

This matter is currently before the Court on plaintiffs' and defendants' cross-motions for summary judgment pursuant to Rule 56, F.R.Civ.P. Third-party defendant Union has also moved for summary judgment or, alternatively, to have the claims against it dismissed pursuant to Rule 12(b), F.R.Civ.P.

BACKGROUND

On July 14, 1981, defendant Employer and the Union signed a collective bargaining agreement (the "Agreement") ending a long, bitter, and sometimes violent, labor dispute that had commenced in January of that year. The dispute arose after the parties were unable to reach a new accord following the expiration on December 31, 1980 of a previous collective bargaining agreement (the "Prior Agreement").

The Agreement is a comprehensive, eighty-seven-page document covering all aspects of the employer/employee relationship. During the negotiations leading up to the Agreement on July 14, the level of

worker's compensation was concededly a major area of disagreement. In the Agreement the Union and the Employer ultimately provided for two separate wage increases as well as for increased Employer contributions to the three Funds. Paragraphs XXI through XXIV of the Agreement set forth the Employer's obligations to the Funds. The clear and unconditional language of these paragraphs requires the Employer to pay every month to each of the three Funds a stated percentage of the previous month's payroll.

Defendant Employer, however, asserts that its obligation to contribute to the Funds never matured because the Agreement is void and unenforceable. In support of this assertion, the Employer raises two claims.[1] Defendants' first argument is that the Agreement never became effective because it was subject to an unsatisfied condition precedent. Defendants allege that the Union orally agreed that the Agreement would not take effect unless the Employer received sufficient reimbursement from the Medicaid program to cover the increased labor costs. Both the Union and the Funds deny that the Agreement is predicated upon such performance by the state.

Defendants also claim that the Agreement is null and void because they were fraudulently induced to sign it. Contemporaneously with their execution of the Agreement on July 14, the Union and the Employer signed two other stipulations relating to the resolution of the labor dispute. One provision of these stipulations provides that "... there will be no reprisals of any kind whatsoever against either party or against any employee because of his or her position in supporting or failing to support the strike or any position of either of the parties ...." (the "No-Reprisals Clause"). Defendants allege that the Union has not adhered to this provision and never intended to do so, and that they would not have entered into the Agreement had they known that the Union's promise not to en-

gage in reprisals was false and fraudulent. These same two arguments serve as the basis for defendants' third-party claims against the Union, which claims the Union has moved to dismiss.

## LEGAL STANDARD

In the determination of motions for summary judgment, the applicable legal standard is quite clear. The Court must be satisfied that the moving party has met its burden of establishing that there is no genuine issue with respect to any material fact and that it is entitled to judgment as a matter of law. Rule 56, F.R.Civ.P.; *Friedman v. Meyers,* 482 F.2d 435, 438–39 (2d Cir.1973). In making this determination, the Court cannot try issues of fact, but can only determine whether there are issues of fact to be tried. *SEC v. Research Automation Corporation,* 585 F.2d 31, 33 (2d Cir. 1978). The Court will consider affidavits, depositions, answers to interrogatories, and admissions, but will not give any effect to mere conclusory allegations or denials or to unsubstantiated assertions submitted by a party. *Id.* Finally, if there is a genuine dispute as to damages, but the Court is convinced that liability is established as a matter of law, it may grant summary judgment on the issue of liability alone. Rule 56, F.R.Civ.P.

## THE CURRENT COLLECTIVE BARGAINING AGREEMENT

As previously noted, plaintiffs and defendants have cross-moved for summary judgment on the issue of the Employer's liability for contributions to the Funds for the period of time covered by the Agreement, commencing July 14, 1981 and continuing through the present. Both sides acknowledge that they executed the Agreement on July 14, 1981 and that the plain and unambiguous language of Paragraphs XXI–XXIV of the Agreement requires the payments demanded in this action. Thus, if these Paragraphs are effective, this action becomes a simple suit for collection which may properly be maintained by the Funds

---

1. In their answer, defendants also assert a defense that the Funds' claims fall within the arbitration clause contained in the Agreement.

In their motion papers, however, defendants abandon this defense.

as third-party beneficiaries, irrespective of any participation by the Union itself. See *Trustees of National Benefit Fund for Hospital and Health Care Employees v. Constant Care Community Health Center, Inc.,* 669 F.2d 213, 215 (4th Cir.1982).

As a legal matter, defendants are not precluded from raising as a defense to the Funds' suit for collection a claim that they are not contractually obligated to the Funds. Although the Supreme Court in *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982), recognized that federal labor policy limits the scope of defenses an employer may raise against a pension fund's collection efforts, this limitation presumes the existence of a contractual obligation to the fund. See *Lewis v. Benedict Coal Corp.,* 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960); see also *Huge v. Long's Hauling Co., Inc.,* 590 F.2d 457 (3d Cir.1978). This case does not present a situation such as that in *Lewis v. Benedict Coal Corp., supra,* where the employer claimed an offsetting defense to its concededly operative contractual obligation to contribute to the funds. The issue here is the more basic question of whether the provision creating the duty to pay into the Funds is itself effective. Where, as here, the defenses seek to establish the non-existence of any contractual duties to the Funds, federal labor policy does not preclude them.

A. The Oral Condition

■ Defendants' first argument is that the entire Agreement is null and void because the parties orally agreed that it was not to become effective until the State had provided the Employer with increased Medicaid reimbursement. Defendants characterize this oral agreement as a condition precedent to the existence of the entire Agreement. This Court is not, of course, bound by defendants' legal categorization of their own actions. The classification of this oral agreement is of potential importance, however, because of the application of the parol evidence rule.

Under New York's common law principles, parol evidence will be permitted to show the existence of a condition precedent to the effectiveness of an entire written agreement, whereas such oral evidence will not be considered to establish a condition to the performance of a single obligation under, or to vary the terms of, an integrated writing. See *Hicks v. Bush,* 10 N.Y.2d 488, 225 N.Y.S.2d 34 (1962). The rights of the parties in this action are, of course, governed by federal, not state, law. See *Benedict Coal, supra,* 361 U.S. at 470, 80 S.Ct. at 495. But there is no statutory code of federal contract law, *Mullins, supra;* therefore a district court is permitted to incorporate forum law "to inform federal principles affecting the respective rights of parties, but only where 'it effectuates the policy that underlies federal labor legislation.'" *Waggoner v. Dallaire,* 649 F.2d 1362, 1365 (9th Cir.1981).

Although I sense that it might violate federal labor policy to recognize such a condition, in this case I need not decide whether, as a matter of federal law, a party should be permitted to vitiate an entire collective bargaining agreement by establishing through parol evidence the existence of a condition precedent to the effectiveness of that agreement. *But see Lewis v. Mears,* 297 F.2d 101, 105 (3d Cir.1962). To borrow a line from Judge Weinfeld, I must state that it taxes credulity that the Union and the Employer's representatives, all capable and knowledgeable businessmen, after months and months of intensive negotiations and bargaining finally signed a collective bargaining agreement of approximately ninety pages, as well as several additional written stipulations, that did not reflect their true and complete arrangement. *Meinrath v. Singer Co.,* 482 F.Supp. 457, 460 (S.D.N.Y.1979). But, even accepting all of defendants facts as set forth in their affidavits, they do not show that the effectiveness of the *entire* Agreement was contingent upon the satisfaction of the oral condition. Rather, if believed, the Employer's allegations establish merely that the pay increases provided for by the Agreement, including both salary increases and contributions to the Funds, would be subject to receipt by the Employer of sufficient

Medicaid reimbursement from the State. It is quite clear that under existing principles of federal labor law, as well as under common law rules, such oral evidence is not admissible to vary the express terms of a written collective bargaining agreement. See, *e.g., Waggoner, supra,* 649 F.2d at 1365–66; *Meinrath, supra,* 482 F.Supp. at 460–61.

■ The policies underlying the exclusion of parol evidence in favor of a written integrated agreement are especially applicable to collective bargaining agreements. A collective bargaining agreement is unusual in that it is an attempt to create a system of industrial self-government. *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). In negotiating the contract, the union bargains not merely for itself, but also as a representative of the workers and sometimes for others such as the trustees of pension and welfare funds. In this context, it is crucial that the employees and other beneficiaries have "a written embodiment of their rights and duties which can be ascertained by all." *Lewis v. Lowry,* 295 F.2d 197, 202 (4th Cir.1962) (Soboleff, J., dissenting). As the Ninth Circuit recently stated with respect to the oral modification of a written trust arrangement:

> Employees, basing their futures on the promise of an old age pension provided in a union contract may discover in later years to their surprise that an oral side agreement had eroded the worth of their pension rights. The rule may also tempt local union representatives and employers to enter corrupt bargains since no written record would exist delineating the employer's trust obligations.

*Waggoner, supra,* 649 F.2d at 1366. In light of these sound legal principles, I conclude that defendants' allegations that payments to the Funds were orally conditioned upon the receipt of reimbursement from the State must be excluded as a matter of law.

B. Fraudulent Inducement

■ Defendants' second defense is that they were fraudulently induced to sign the Agreement because the Union did not intend to adhere to, and in practice has not adhered to, the No-Reprisals Clause entered into as part of a separate strike-settlement stipulation which was executed contemporaneously with the Agreement. This claim must fail as a matter of law for two reasons. First, in their supporting affidavits, defendants set forth various acts which they allege violate the No-Reprisals Clause. The gravamen of their defense, as stated in the affidavit of Bartholomew Lawson, is that: "Judging by its future course of conduct, it may fairly be stated that District 1199 knew that it intended to continue with such reprisals after the contract was executed, . . . ." It is clear, however, that fraud requires more than a showing of nonperformance of the promise; an intent not to perform must be established independently from the showing of failure to perform. See *Perma Research and Development Co. v. Singer Company,* 410 F.2d 572, 576 (2d Cir.1969); *Cranston Print Works Co. v. Brockman,* 521 F.Supp. 609 at 614 (S.D.N.Y.1981) (Conner, J.). Defendants' allegations of intent are simply inferences drawn from the Union's failure to comply with the contractual promise. That showing is not sufficient.

■ Even assuming that the Union never intended to comply with the No-Reprisals Clause, however, defendants have not established a defense to the effectiveness of the Agreement. Courts have previously recognized that a collective bargaining agreement and a strike-settlement agreement are independent of one another. See *Lodges 743 and 1746, International Association of Machinists and Aerospace Workers, AFL–CIO v. United Aircraft Corporation,* 534 F.2d 422, 441 (2d Cir.1975). In this case, the No-Reprisals Clause is contained in a separate, fully integrated stipulation. The strike settlement stipulation, of which the No-Reprisals Clause is a part, sets forth the conditions under which the parties would terminate the strike and the workers would return to work pursuant to the terms of the Agreement. But the provisions of the strike settlement stipulation

are not material to the economic bargain that was negotiated by the parties and commemorated in the Agreement. Thus, even if the Union misrepresented its intentions with respect to the No-Reprisals Clause, that promise could have no bearing on the terms of the worker's compensation under the Agreement.

This conclusion does not leave defendants without a remedy for the Union's misconduct under the No-Reprisals Clause. They may bring a separate action against the Union directly upon the strike settlement stipulation, which is itself an independent contract. Under the terms of Paragraph Thirteen of that stipulation, however, such an action must be submitted to arbitration.

C. Penalty Provision

[7] In support of their own cross-motion for summary judgment, defendants have alleged that the provision under which the Funds claim payments is unenforceable as an illegal penalty clause. Paragraph XXIV, subparagraph 6 of the Agreement provides: .

> In the event that the Trustees of the Fund(s) have terminated benefit coverage or pension credits to Employee(s) because the Employer has failed to comply with the contribution requirements of Articles XXI, XXII and/or XXIII, then the Employer shall be directly liable to the affected Employee(s) for benefits to which the Employees would otherwise be entitled under the Funds; the amount of any benefits directly paid by the Employer pursuant to this paragraph may not be credited or offset by the Employer against the amounts due the Fund(s) under Articles XXI, XXII and XXIII, it being understood that the Employer shall continue to be obligated to make contributions to the Fund(s) in accordance with Articles XXI, XXII and XXIII. However, in the event that the Employer pays all past due contributions, interest, costs and expenses as provided in this Article,

it shall be entitled to a credit equal to 65% of the actual audited benefits paid directly but shall in addition be liable for the costs of auditing such direct payments in the amount of 15% of such amount.

Defendants assert that this provision is a penalty because, even if they remedy all of their past due obligations toward the Funds, they are entitled to a credit for only a portion of the benefits that they may have paid directly to the employees.

Contrary to defendants' claims, however, this provision is wholly irrelevant to the matter currently before the Court. In this case it is undisputed that the Employer has made no direct payments to the employees during the time in which its obligations to the Funds have been in arrears. The Funds simply seek to receive the contractually required payments and stand ready to provide all past due benefits to the employees upon receipt of those payments. Thus, this Court does not have occasion to determine whether such a condition would indeed be void as a penalty since the disputed provision is not applicable to the instant facts.

D. Judgment, Attorney's Fees, and Interest

In light of my resolution of the foregoing matters, summary judgment should be granted in favor of plaintiffs on the question of defendants' liability for payments under the Agreement. There remains no issue of material fact and plaintiffs are entitled to judgment as a matter of law. Rule 56, F.R.Civ.P. Because the parties have failed to give the Court adequate guidance concerning the amount currently due to the Funds under the terms of the Agreement, this matter will be submitted to a Magistrate who shall determine that sum. See Rule 56(c), F.R.Civ.P.

■ In determining the amount plaintiffs should be entitled to recover, the Magistrate is instructed to include interest on past due contributions [2] as well as a reason-

---

2. The Agreement provides for interest at a rate of one and one-half percent per month on past due contributions. Federal law provides that the contractually specified rate be used; but if no rate is set, then the rate prescribed under 26 U.S.C. § 6621 would apply. See 29 U.S.C.A. § 1132(g)(2) (West Supp.1981). In addition, federal law provides for double interest. See

able allowance for attorney's fees. Although defendants object to both of these items, their positions are without merit. Interest on past due payments to employee benefit funds is not, contrary to the Employer's suggestion, a penalty. See *Hammond v. James W. Griffin Co., Inc.,* 520 F.Supp. 162, 167 (N.D.Ga.1981). Moreover, an award of interest in this case is statutorily mandated as well as contractually authorized, 29 U.S.C.A. §§ 1132(g)(2)(B)–(C) (West Supp.1981).

Defendants' argument that an allowance for attorney's fees would not be appropriate is equally unpersuasive. It is of course clear that attorney's fees may only be awarded where congressionally authorized. See *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 269–71, 95 S.Ct. 1612, 1627–1628, 44 L.Ed.2d 141 (1975). In this case, the Employee Retirement Income Security Act of 1974 ("ERISA") makes provision for the granting of attorney's fees to a successful plaintiff.[3] Defendants contend, however, that the Funds should not be entitled to take advantage of this provision because they do not need ERISA jurisdiction in order to enforce the Agreement in federal court.[4] I am unable to find any logic in that argument. Simply because the Funds might have a remedy under another entirely separate provision of federal law does not deprive them of their right to assert jurisdiction under ERISA.

ERISA requires all employers to make the payments to employee pension funds for which they are contractually obligated. 29 U.S.C.A. § 1145 (West Supp.1981) provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

By not making the contributions to the Funds required under the terms of the Agreement, defendants have violated this provision. By demonstrating this violation of Section 1145, plaintiffs have stated a claim under 29 U.S.C.A. § 1132, which also entitles a prevailing plaintiff to recover his attorney's fees. Moreover, the award of attorney's fees is mandatory, not discretionary, pursuant to the 1980 amendments to Section 1132. See *San Pedro Fishermen's Welfare Trust Fund Local 33 v. Di Bernardo,* 664 F.2d 1344, 1346 (9th Cir.1982). These amendments reflect a clearly expressed congressional purpose to deter employers from failing to make their bargained-for contributions to the employee funds. As one court has aptly summarized:

Under ERISA delinquent contributions were enforced by an action founded either on state law, the collective bargaining agreement between the parties or the trust agreement forming the foundation for the employee benefit plan. By adding Section 515 [29 U.S.C. § 1145] to ERISA the 1980 amendments created a statutory cause of action.

... While the Court's discretion to award attorney fees in other kinds of

---

29 U.S.C.A. §§ 1132(g)(2)(B)–(C) (West Supp. 1981).

**3.** 29 U.S.C.A. § 1132(g)(2) provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the

amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

**4.** At page 23 of their brief, defendants state: "Plaintiffs do not need ERISA jurisdiction to enforce the collective bargaining agreement; Section 301 of the LMRA provides a fully adequate remedy for their contract claim."

actions continues, under the 1980 amendment to Section 502 of ERISA a judgment in favor of a plan for delinquent contributions must include (i) interest on the unpaid contributions, (ii) . . . , and (iii) attorney fees.

The effect of the 1980 amendments is to substantially increase the cost of failing to make required contributions.

*Central States, Southeast and Southwest Areas Pension Fund v. Alco Express Co.,* 522 F.Supp. 919, 922–23 (E.D.Mich., S.D. 1981). The Funds, therefore, are properly entitled to receive interest on delinquent payments and attorney's fees as part of their recovery against the Employer.

### E. Injunctive Relief

The Funds have also requested injunctive relief requiring the Employer to make the remaining payments required by the Agreement as they become due. Under ERISA, this Court has been affirmatively authorized by Congress to issue an injunction in this type of situation. See 29 U.S.C.A. § 1132(g)(2)(E) (West Supp.1981). At this time, however, I do not believe such an injunction is necessary or appropriate. This action was plaintiffs' first suit to compel payment of contributions which defendants had been withholding pending determination of what they apparently considered substantial defenses to their obligations to contribute to the Funds. Now that this Court has settled the invalidity of those defenses in this action, there is no suggestion that defendants will not perform their legal duty and make the payments required by the Agreement. If, however, defendants should fail to make future contributions to the Funds as they come due, this Court would reconsider issuance of the injunction requested. I should note, moreover, that if the Funds are again required to bring suit to compel payments, they will be entitled to recover their attorney's fees and double interest on the delinquent contributions. Thus, their remedy at law is fully adequate.

### THE PRIOR AGREEMENT

A second of the Funds' claims against defendants is predicated upon a collective bargaining agreement for the period ending December 31, 1980. Plaintiffs have established by affidavit that the amount due under the Prior Agreement was $2,703.47 as of June 21, 1982. Defendants have not denied liability for contributions to the Funds during this earlier period, but merely question the amount owed. In his affidavit Bartholomew J. Lawson states that "[t]his sum, representing interest, is disputed by Woodhull." In light of my decision above that the Funds are entitled to recover interest on past due contributions, the fact that this $2,703.47 represents interest would not constitute a legal defense to its collection. It is clear that the 1980 Amendments to ERISA, which provide for double interest on delinquent contributions, see 28 U.S.C.A. §§ 1132(g)(2)(B)–(C), apply to claims for periods prior to 1980. See *Di Bernardo, supra,* 664 F.2d at 1346.

Moreover, under Rule 56, F.R.Civ.P., a party may not rest upon the mere allegations or denials of his pleadings when opposing a motion for summary judgment, but must respond as provided in the Rule to establish that there exists a material issue for trial. Defendants' only other reference to the amount allegedly due under the Prior Agreement is contained in footnote one of their summary judgment memorandum, where they state:

Paragraphs "SIXTH" and "SEVENTH" of plaintiffs' Statement of Material Facts, etc., alleges that as of April 22, 1982, the amount due the Funds by reason of a *previous* collective bargaining agreement amounted to $25,584.77. Payments by Woodhull during May and June, we are advised, has reduced the amount purportedly due to $2,069.45, which sum is disputed. This memorandum shall not be concerned with disputes arising out of a previous collective bargaining agreement.

Defendants have offered this Court no more than the above-quoted conclusory allegations, which do not satisfy their duty under Rule 56 of showing that the Funds' entitlement to $2,703.47 is in issue. Accordingly, the Court concludes that the Funds

are entitled to judgment in the amount of $2,703.47, less any payments made after June 21, 1982 to reduce this sum.

## THIRD–PARTY COMPLAINT

The Union, third-party defendant in this action, has moved, in the alternative, for dismissal of the complaint against it or for summary judgment on the claims asserted. Because defendant and third-party plaintiff Employer has failed to allege that the Union may be liable for all or part of the Funds' claim against the Employer, the third-party complaint must be dismissed.

 Rule 14, F.R.Civ.P., provides that a defendant may implead by way of a third-party complaint "a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." Although the third-party claim need not be based on the same theory as the main claim, it must be that the third-party is liable to the defendant for all or part of the plaintiff's claim against the defendant. See C.A. Wright, Handbook on the Law of Federal Courts, § 76 at 376 (3d ed. 1976). In this case, while the Employer has indeed asserted the same facts against the third-party Union as it has in defense to plaintiffs' claims against it, it has not alleged any theory under which the Union could be responsible for any or all of its liability toward the Funds. The third-party complaint must, therefore, be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6), F.R.Civ.P.

## SUMMARY

As a result of this Court's rulings above, summary judgment will be entered in favor of plaintiffs on the issue of defendants' liability for payments to the Funds under both the Agreement and the Prior Agreement. A Magistrate will be appointed for the purpose of determining the amount plaintiffs shall be entitled to recover. In ascertaining that sum, the Magistrate will include $2,703.47 under the Prior Agreement, less any payments after June 21, 1982 to reduce that amount, all delinquent contributions under the Agreement, double in-

terest, and reasonable attorney's fees. I am, however, denying plaintiffs' request for an injunction for the reasons stated above. Finally, the third-party complaint is dismissed for failure to state a claim upon which relief can be granted.

SO ORDERED.