**TRUSTEES OF the AMALGAMATED INSURANCE FUND, Plaintiffs,**

v.

**SHELDON HALL CLOTHING, INC.; Sheldon Mehrman, t/a Meyer D. Mehrman & Son; and Sheldon Mehrman, Defendants.**

Civ. A. No. 84–6184.

United States District Court, E.D. Pennsylvania.

Jan. 12, 1988.
On Motion for Reconsideration
March 4, 1988.

Alan F. Markovitz, Philadelphia, Pa., for plaintiffs.

Henry S. Perkin, Allentown, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

The plaintiff instituted this action on December 18, 1984, pursuant to the Employee Retirement Income Security Act ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") (hereinafter simply "ERISA"), Pub.L. 93–406, 88 Stat. 832 (codified as amended in scattered sections of 26 and 29 U.S.C.), seeking to recover monies allegedly due it as a result of the defendants withdrawal from the Fund. Specifically, the plaintiff seeks to recover what it calculates to be the defendants' "withdrawal liability" pursuant to Sections 4201 through 4219 of ERISA, 29 U.S.C.A. §§ 1381–1399 (West 1985). The defendants interposed a variety of objections to the plaintiff's claim. Because of perceived disputed issues of material fact, the matter was tried before this Court sitting without a jury. The following discussion constitutes our Findings of Fact and Conclusions of Law as required by Federal Rule of Civil Procedure 52(a).

At the beginning of the trial of this matter, the parties presented a joint stipulation of facts which was read into the record. The stipulated facts may be summarized as follows:

1. The plaintiff, by and through its Deputy Plan Administrator, Richard S. Burker, gave notice of withdrawal liability and demand for payment upon "Sheldon Mehrman, President of Sheldon Hall Clothing, Inc./Meyer D. Mehrman", by letter dated December 28, 1981. (*See* Joint Exhibit # 1.);

2. The defendants made a timely request for review of the aforesaid withdrawal liability assessment pursuant to 29 U.S.C.A. § 1399(b)(2)(A)(i) by letter

dated February 18, 1982, sent to Mr. Richard S. Burker, certified mail, return receipt requested, which was accepted by the said Richard S. Burker on February 22, 1982. (*See* Joint Exhibit # 2.);

3. The Deputy Plan Administrator for the plaintiff responded to the defendants' request for review by letter dated March 25, 1982. (*See* Joint Exhibit # 3.);

4. On January 15, 1982, the plaintiff's Deputy Plan Administrator, Richard S. Burker, made demand on Sheldon Mehrman, as president of Sheldon Hall Clothing, Inc./Meyer D. Mehrman, for the payment of withdrawal liability assessed by the plaintiff's calculation in the amount of $238,198.75, payable in quarterly installments of $7,189.92. (*See* Joint Exhibit # 4.);

5. In order to enforce the aforesaid calculation of withdrawal liability against Sheldon Hall Clothing, Inc., and *Meyer D. Mehrman*, plaintiff demanded an arbitration at 77 Broadway, New York, New York, on September 20, 1983, (*see* Joint Exhibit # 5), wherein the arbitrator noted appearences as follows: for petitioners (*i.e.*, the plaintiff Fund), Mark Schwartz, Esq.; for respondents, David C. Schattenstein, Esq., and *Meyer D. Mehrman*, (*see* Joint Exhibit # 6) [1];

6. *Sheldon Mehrman* did appear at the arbitration hearing with his counsel, David Schattenstein, Esq.;

7. The arbitrator of the aforesaid arbitration, Millard Cass, rendered findings and an award against both Sheldon Hall Clothing, Inc. (hereinafter simply "SHC"), and *Meyer D. Mehrman*, on October 27, 1983, awarding the plaintiff: (1) $238,198.75 by way of withdrawal liability; (2) $9,719.35 by way of interest and liquidated damages under § 4301 of ERISA, together with interest from the date of hearing until the date of payment; (3) the sum of $50.00 for arbiter's fees and costs; and (4) the sum of $100.00 for legal fees, for a total award of $248,218.10.

8. At the time of the award, SHC was a Pennsylvania corporation with its principal place of business at 418 N. Franklin St., Allentown, Lehigh County, Pennsylvania, with its sole shareholder and president as Sheldon Mehrman;

9. On or about October 1981, Sheldon Mehrman operated a sole proprietorship under the name of Meyer D. Mehrman & Son; and

10. Plaintiffs are the sponsors of a multiemployer benefit retirement plan within the meaning of ERISA.

Following the introduction of these stipulated facts into the record, further undisputed facts came to light. They are as follows: On November 29, 1983, thirty-one (31) days after the arbitrator rendered his award in favor of the plaintiff, the Fund instituted an action against SHC and Meyer D. Mehrman in the United States District Court for the Southern District of New York pursuant to 29 U.S.C. § 1401(b)(2) to enforce the arbitrator's award.[2] (*See* plaintiff's Exhibit # 3.) For reasons which still

---

**1.** We cannot explain the plaintiff's motivation for initiating arbitration proceedings against SHC and Meyer D. Mehrman pursuant to 29 U.S.C. § 1401(a). Our reading of ERISA as applied to the facts of record indicates that SHC's and Meyer D. Mehrman's failure to make timely payments of their withdrawal liability "installments" did not give rise to an "arbitrable dispute" as contemplated in § 1401(a). Though § 1401(a) provides that either the employer or the plan sponsor may initiate arbitration proceedings, as a practical matter, the onus was upon SHC and Meyer D. Mehrman to initiate such proceedings if they were not satisfied with the Fund's response to their request for review of the calculation of their withdrawal liability. Absent the initiation of arbitration proceedings by SHC and/or Meyer D. Mehrman, the plaintiff could simply have commenced an action against both pursuant to 29 U.S.C. § 1401(b)(1) to collect the amount it had assessed them as their withdrawal liability.

**2.** The plaintiff initially contended that the New York action had been commenced on November 28, 1983—thirty (30) days after the arbitrator rendered his decision—by leaving a copy of the "Petition To Confirm Arbitration Award", (plaintiff's Exhibit # 2), in the night depository for the Clerk of Court of the Southern District of New York on that date after 5:00 P.M. The plaintiff has abandoned this contention, however, in light of General Rule 1 of the Local Rules of the Southern District of New York, which provides that papers deposited in this manner will be considered filed as of the following business day.

remain a mystery, the New York action was dismissed on November 13, 1984, by order of the Hon. Robert W. Sweet on the ground that the action had been settled. (*See* plaintiff's Exhibit # 1.) Thereafter, on December 7, 1984, upon request of the plaintiff, Judge Sweet entered a second order dismissing the case, without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1). The plaintiff's stated reason for this request was that it had been unable to render effective service of process upon SHC and Meyer D. Mehrman. (*See* plaintiff's Exhibits 1 and 2.) [3]

On December 18, 1984, more than a year after the arbitrator entered his award in favor of the Fund and the Fund had instituted its action against SHC and Meyer D. Mehrman in the Southern District of New York, the plaintiff commenced this action against SHC and *Sheldon Mehrman*, individually and trading as Meyer D. Mehrman & Son.[4] In its Complaint, the plaintiff sets forth three (3) Counts. Count I seeks judgment against both defendants under what is perhaps best described as an "independent" cause of action, *i.e.*, independent of the arbitration award. In Count II, the plaintiff seeks judgment against both defendants in the form of confirmation and enforcement of the arbitration award described above pursuant to 29 U.S.C. § 1401(b)(2). In their answer, the defendants aver, *inter alia*, that they were not part of a commonly controlled group as defined by ERISA, that no arbitration award had ever been entered against *Sheldon Mehrman*, as opposed to *Meyer D. Mehrman*, and that the plaintiff has failed to comply with 29 U.S.C. § 1401(b)(2) by filing this action more than thirty (30) days after the arbitrator had rendered his decision.

At trial, Sheldon Mehrman testified that in 1981, he was the sole shareholder and chief operations officer of SHC, and had been such for approximately ten (10) years prior thereto. He stated that from January 1976, SHC had operated as a sewing contractor. He further testified that approximately nine (9) months after the corporation started operations as a sewing contractor, the employees formed a collective bargaining unit and negotiated a contract. It was pursuant to this contract and the renewals thereof that SHC made payments to the plaintiff Fund. SHC ceased operations in late October-early November of 1981 for economic reasons, and, as a result, all union employees were terminated.

As to Meyer D. Mehrman & Son, Sheldon Mehrman testified that he was the sole owner of the proprietorship which had been founded by his father. He stated that Meyer D. Mehrman & Son functioned as a "manufacturer" of men's and some women's clothing, *i.e.*, the proprietorship purchased fabric and designed and cut patterns. The patterns were then sent to outside personnel for "assembly", and thereafter, were returned to Meyer D. Mehrman & Son. Sheldon Mehrman stated that Meyer D. Mehrman & Son did not cease operations until some time in 1983. At his deposition, however, he testified that the "businesses" ceased operations on November 13, 1981. Likewise, the arbitrator found that both SHC and "Meyer D. Mehrman" ceased operations on the same date, and that such a cessation of operations constituted a withdrawal from the Fund's pension plan as defined by ERISA. (*See* Joint Exhibit # 6, Finding of Fact # 2.) Further, the only evidence before us as to what occurred during the arbitration hearing, *i.e.*, the arbitrator's Findings and Award, indicates that the only challenge to the plaintiff's assessment asserted by the defendants was the Fund's determination that

---

**3.** The record before us does not disclose whether Judge Sweet's order of 11/13/84 dismissed the case with or without prejudice. Further, it appears that the order of 11/13/84 was never vacated, but rather, that the order of 12/7/84 was simply filed and entered on the docket.

**4.** The plaintiff originally named as defendants in this action SHC and Sheldon Mehrman, individually and trading as Meyer D. Mehrman. At trial, the plaintiff moved to amend the caption to name Sheldon Mehrman as a defendant individually and trading as Meyer D. Mehrman & Son. The defendants did not oppose this motion and it was, therefore, granted. (*See* minute order dated August 7, 1987, Doc. # 12.)

SHC and Meyer D. Mehrman constituted a commonly controlled group. (*See, id.*)

Regarding the "relationship" between SHC and the sole proprietorship, Sheldon Mehrman testified that while both businesses operated out of the same building and the union employees of both entities were represented by the same union, the two businesses functioned as two completely separate and distinct commercial entities. He stated that the two businesses had separate contracts with the union, though both agreements had the same expiration date; that the businesses, though located in the same building, occupied different floors under separate leases; that SHC sewed none of the clothing manufactured by the sole proprietorship, nor were there any contracts between the two; and finally, that no money passed between the two entities.

As stated above, one of the defendants' primary contentions is that the plaintiff failed to timely file its action. Specifically, the defendants argue that the plaintiff failed to file this action within the time prescribed by 29 U.S.C. § 1401(b)(2), *i.e.*, thirty (30) days after the issuance of the arbitrator's award. In response, the plaintiff argues that, even if it is barred from seeking to enforce the arbitration award pursuant to § 1401(b)(2), it still possesses an "independent" cause of action under 29 U.S.C. § 1451, pursuant to which it is entitled to judgment in the same amount as if it were simply seeking to enforce the aforementioned arbitration award.

In interpreting a statute, here ERISA, we are required to read the act so as to, wherever possible, give effect to all of its component parts. Likewise, given ERISA's remedial nature, we must also construe the statute, wherever possible, so as to favor plan sponsors such as the plaintiff. The complexity of ERISA, combined with its less than concise drafting, makes these tasks no simple chore. The dearth of case law and legislative history further complicates our job. *See* 1980 U.S.Code Cong. & Admin.News 2918–3067; *see also, Central States Southeast and Southwest Areas Pensions Fund v. T.I.M.E.–DC, Inc.*, 826 F.2d 320, 327 n. 5 (5th Cir.1987).

We believe that to interpret § 1401(b)(2) in the manner suggested by the defendants, *i.e.*, so as to require the plaintiff to have filed its action within thirty (30) days of the arbitrator's award, would neither give effect to all of ERISA's enforcement provisions nor effect the statute's remedial purpose. Under the defendants' interpretation of the statute, wherever arbitration proceedings have been initiated pursuant to § 1401(a)(1), plan sponsors such as the plaintiff would be required to seek enforcement of the arbitration award within thirty (30) days of the issuance of the award. In other words, the plan sponsor would be required to reduce the arbitration award to a judgment by filing an action in district court. Though we admit it is extremely difficult to glean from the face of the statute, specifically, §§ 1401(b) and 1451, exactly what Congress intended, we find the defendants' proposed construction of § 1401(b)(2) illogical. First, Congress specifically provided in § 1401(b)(2) that any action pursuant thereto shall be brought in accordance with § 1451. Section 1451(f) provides that any cause of action under that section must be brought within the later of six (6) years after the cause of action arose or three (3) years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action. The action *sub judice* was clearly brought within the time prescribed by § 1451(f). Second, the defendants' interpretation of § 1401(b)(2) makes no provision for those cases in which an employer fully complies with its statutory obligation to make installment payments on its withdrawal liability as calculated by the plan sponsor pending § 1399(b)(2)'s review process and § 1401(a)'s arbitration procedures, and does not default on its obligation until, for example, three (3) years after the arbitrator issued a decision. We sincerely doubt that Congress intended that a plan sponsor in such a case would be deprived of a remedy because it had failed to seek "enforcement" of an arbitration award with which the employer had to that point

complied. To construe § 1401(b)(2) in such a manner would not only result in an unnecessary waste of judicial resources, but also in an unnecessary depletion, through the expenditure of attorney's fees and related costs, of the fund's assets. Had Congress intended that plan sponsors be required to reduce arbitration awards to judgments in all cases, regardless of whether the employer had defaulted on its obligation, we believe it could and would have found a clearer manner in which to express such an intent.

Based on the foregoing discussion, we believe that the only logical and reasonable way in which § 1401(b)(2) can be interpreted is that where a plan sponsor or an employer wishes to seek to vacate or modify an arbitration award rendered pursuant to § 1401(a), it must file its action within thirty (30) days of the arbitrator's award. Where, however, a plan sponsor is simply seeking to enforce an arbitration award and the employer, as here, has not sought to have that award vacated or modified, the plan sponsor must file its action within the time prescribed by § 1451(f). We believe that this is the only reasonable and harmonious construction of § 1401(b)(2) which effects the statute's remedial purpose. Based on this conclusion, we find that the plaintiff's action was timely filed.

■ The next issue we must address is defendant Sheldon Mehrman's contention that the plaintiff's action as to him should be dismissed on the grounds that he did not receive the notice and demand for payment of withdrawal liability prescribed by § 1399, nor was an arbitration award ever entered against him personally pursuant to § 1401(a). The defendants' argument in this regard is based upon the plaintiff's incorrect denotement, until the filing of this case, of Meyer D. Mehrman as the employer from which it was seeking to collect withdrawal liability. Based on the facts of record, however, we do not believe Sheldon Mehrman's argument possesses any merit. The facts we refer to are as follows: (1) that *Sheldon Mehrman* received all notices sent by the plaintiff, though the plaintiff incorrectly named Meyer D. Mehrman as the respondent; (2) that *Sheldon Mehrman* retained counsel to represent both SHC and "Meyer D. Mehrman"; (3) that Sheldon Mehrman personally attended the arbitration hearing held pursuant to § 1401(a), though the arbitrator improperly referred to him in his decision as Meyer D. Mehrman and incorrectly named Meyer D. Mehrman as respondent along with SHC; and (4) that neither Sheldon Mehrman nor his attorney ever attempted to point out the plaintiff's error. Based on these facts, we do not believe Sheldon Mehrman can now be heard to say that the plaintiff failed to comply with the requirements of § 1399 or that he was not a participant in the arbitration proceedings initiated by the plaintiff. To hold otherwise would be the ultimate exaltation of form over substance.

We now proceed to the defendants' substantive challenges to the arbitrator's award. Initially, we note the recent affirmation, by an equally divided Supreme Court, of the Third Circuit Court of Appeals decision in *United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.*, 787 F.2d 128 (3d Cir.1986), *aff'd.*, — U.S. ——, 107 S.Ct. 2171, 95 L.Ed.2d 692 (1987). Prior to the Third Circuit's decision in *Yahn and McDonnell*, § 1401(a)(3)(A) required an arbitrator to apply a presumption of correctness to the plan sponsor's determination of the employer's withdrawal liability. Likewise, under § 1401(c), a district court reviewing the decision of an arbitrator pursuant to § 1401(b)(2) is required to apply a presumption, rebuttable only by a clear preponderance of the evidence, that the findings of fact made by the arbitrator are correct. In *Yahn and McDonnell*, the Third Circuit struck down § 1401(a)(3)(A) as unconstitutional on the ground that the presumption of correctness given a fund's calculation of an employer's withdrawal liability denied the employer an impartial decision, and hence, denied the employer procedural due process. In this case, it is unclear whether the arbitrator applied any such presumption of correctness as to the plaintiff's assessment of the defendants' withdrawal lia-

bility. We also note that, according to arbitrator's decision, the only challenge to the plaintiff's assessment by the defendants was the plaintiff's treatment of them as a "commonly controlled group" within the meaning of ERISA, thereby rendering them jointly and severally liable for their combined withdrawal liability. We do not believe the fact that the arbitrator may have accorded, in light of *Yahn and McDonnell,* an improper presumption of correctness to the plaintiff's assessment presents an impediment to our resolving this matter, however, for even according the defendants *de novo* review of the plaintiff's calculations, we find the plaintiff is entitled to enforcement of the arbitration award against the defendants.

■ The defendants' challenge to the plaintiff's treatment of them as a "commonly controlled group" consists of two facets. First, they cite Sheldon Mehrman's testimony as to the manner in which SHC and the sole proprietorship were maintained as two completely separate and distinct entities. The concept of a "commonly controlled group" for purposes of ERISA, however, is not so much a question of the purported group members' operational relationship as it is of ownership and control. Here, Sheldon Mehrman readily admitted that not only was he the sole owner of the proprietorship, but that he was also the sole shareholder and chief operations officer of SHC. Thus, the sole proprietorship and SHC formed the purest commonly controlled group possible, *i.e.,* a group with only one owner and head. *See, e.g., IUE AFL–CIO Pension Fund v. Barker & Williamson,* 788 F.2d 118 (3d Cir.1986) and *Connors v. Calvert Development Co.,* 622 F.Supp. 877 (D.D.C.1985).

The defendants next contend that the common control group concept as contemplated in ERISA applies only to corporations. The defendants' argument is baseless. 29 U.S.C. § 1301(b) specifically provides that, "... all employees of trades or businesses (*whether or not incorporated*) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer ..." (Emphasis added.); *see also, Connors v. Peles Coal Co.,* 637 F.Supp. 321 (D.D.C.1986) and *Connors v. Clavert Development Co., supra.* A commonly controlled group may, for example, consist of a group of corporations, a partnership and corporation or, as here, a sole proprietorship and a corporation. Hence, we find no merit in the defendants' argument.

■ The defendants' final challenge to the plaintiff's claim is that, should this Court determine that they are liable for withdrawal liability in the amount assessed by the plaintiff, *i.e.,* $238,198.75, the Fund is, nevertheless, not entitled to collect the interest and liquidated damages they seek. At trial, Jeffrey Warbet, an acting assistant vice-president of Amalgamated Life Insurance Company, the administrator of the Fund, testified that as of July 2, 1987, he calculated the defendants' combined withdrawal liability to be $490,493.65. He stated that this figure was based on a principal of $238,198.75, *i.e.,* the plaintiff's calculation of the defendants' withdrawal liability, compounded by the addition of interest thereon at the rate of 20% per annum. Warbet testified that the interest rate of 20% was arrived at by taking the interest rate of 10% prescribed by the Plan and doubling it so as to include an equal amount in the form of "liquidated" damages. The defendants contend that since neither § 1401(b) nor § 1451 provide for the recovery of such interest and liquidated damages, the plaintiff possesses no right to recover such. The defendants' argument, however, ignores the import of § 1451(b), which provides that in an action under § 1451 to compel the payment of withdrawal liability, "... any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (*within the meaning of section 1145 of this title*)." (Emphasis added.) Therefore, in an action such as this, by virtue of §§ 1451(b) and 1145, we must look to 29 U.S.C. § 1132(g)(2). *See Penn Elastic Company v. United Retail and Wholesale Employees Union, Local 115 Joint Pension Fund,* 792 F.2d 45 (3d Cir.1986).

Doing so, we find that not only is the plaintiff entitled to recover the defendants' unpaid withdrawal liability, but also (1) interest thereon, (2) an amount equal to the greater of the same interest just mentioned or liquidated damages provided for under the plan, and (3) reasonable attorney's fees and costs. *See New York State Teamsters Council Health and Hospital Fund v. City of Utica*, 643 F.Supp. 619 (N.D.N.Y. 1986); *Bennett v. Machined Metals Co., Inc.*, 591 F.Supp. 600 (E.D.Pa.1984); and *Lewart v. Woodhull Care Center Associates*, 549 F.Supp. 879 (S.D.N.Y.1982). Section 1132(g)(2) further provides that the rate of interest to be applied is that prescribed by the plan, or, if none, the rate prescribed by 26 U.S.C. § 6621. Here, Warbet testified that the rate of interest provided for by the Plan is 10%. Thus, the plaintiff's calculation of "double interest" at the rate of 20% per annum was completely correct.

In sum, we find and conclude the following: (1) that the plaintiff timely filed this action; (2) that the plaintiff is entitled to enforcement of the arbitration award described above as to Sheldon Mehrman as well as SHC; (3) that Sheldon Mehrman, t/a Meyer D. Mehrman & Son, and SHC constitute a "commonly controlled group" within the meaning of ERISA, and thus, each is jointly and severally liable for the combined withdrawal liability of both; (4) that the plaintiff is entitled to "double interest" on the defendants' unpaid withdrawalliability obligation at the rate of 20% per annum from March 17, 1982; and (5) that the plaintiff is entitled to recover reasonable attorney's fees and costs incurred in prosecuting this action. Judgment will be entered accordingly.

### ORDER

AND NOW, this 12th day of January, 1988, in accordance with the attached memorandum, IT IS ORDERED that:

(1) JUDGMENT IS ENTERED in favor of the plaintiff and against the defendants, jointly and severally, in the amount of $490,643.65 ($238,198.75 plus "double interest" thereon at the rate of 20% per annum from March 17, 1987, to July 2, 1987 plus $150.00 for arbitrator's fees and legal costs as awarded by the arbitrator); and

(2) the plaintiff is awarded the reasonable attorney's fees and costs it incurred in prosecuting this action. The plaintiff shall within twenty (20) days of the date that this Order is filed with the Clerk of this Court file an appropriate affidavit setting forth such fees and costs.

### ON MOTION FOR RECONSIDERATION

Presently before us in this ERISA withdrawal liability collection action is the defendants' Motion For Reconsideration of our Memorandum and Order of January 12, 1988, in which we entered judgment in favor of the plaintiff Fund and against the defendants in the amount of $490,643.65. The defendants aver that we committed a variety of errors, both legal and factual, in reaching the conclusions upon which we based our decision.

Prior to addressing the defendants' "substantive" challenges to our Memorandum and Order, we believe that some of their "peripheral" arguments merit discussion.

First, the defendants assert in their Motion For Reconsideration at ¶ 3(a) that we erroneously found that there was no "arbitrable dispute" between the parties. We, in fact, made no such finding. The only portion of our Memorandum which we believe the defendants can be referring to here is footnote 1. In note 1, we simply stated that the plaintiff Fund possessed no *obligation* to institute arbitration proceedings against the defendants pursuant to § 1401(a). Restating what we stated in note 1, the burden was upon the defendants to avail themselves of § 1401(a)'s arbitration procedures if they wished to challenge the Fund's calculation of their withdrawal liability. The Fund, on the other hand, need have done nothing, by virtue of 29 U.S.C. § 1401(b)(1), and, absent the initiation of arbitration proceedings by the defendants, could have simply sought to collect its calculation of the defendants' withdrawal liability pursuant to § 1401(b)(1) as a debt due and owing. This is not to say that a plan sponsor may not initiate arbitra-

tion proceedings against an employer under § 1401(a). Because of the design of § 1401(a)(1) and (b)(1), the plan sponsor is given a choice. All we stated in note 1 was that we could not envision any circumstance in which a plan sponsor would choose to avail itself of § 1401(a)'s arbitration procedures when it need not do so, and when, absent the employer's initiation of arbitration proceedings under that section of ERISA, it could simply seek to collect its calculation of the employer's withdrawal liability pursuant to § 1401(b)(1) without its assessment being subject to challenge by the employer. Where a plan sponsor elects, for whatever reason, to initiate arbitration proceedings under § 1401(a), it must, of course, adhere to the procedures prescribed by §§ 1401 and 1451. As can be seen, we in no way stated that there was no "arbitratable dispute" between the parties.

Second, the defendants argue that we improperly concluded that the plaintiff possessed an "independent action" under 29 U.S.C. § 1451 separate and distinct from whatever remedy it had under § 1401. Once again, we reached no such conclusion. Reading Sections 1401(b)(2) and 1451 in conjunction with one another, as we must, *see Winzinger v. Management Recruiters of Bucks County, Inc.,* 841 F.2d 497 (3d Cir.1988), what we concluded was that, where a plan sponsor seeks to *enforce* an arbitration award entered pursuant to § 1401(a), it must commence its action within the time prescribed by § 1451(f), not the thirty (30) days prescribed by § 1401(b)(2). We in no way stated that the plaintiff possessed an "independent" cause of action under § 1451 separate and distinct from the arbitration proceedings which had already occurred pursuant to § 1401(a). Once an arbitration has occurred under § 1401(a), both the employer and the plan sponsor, regardless of which initiated arbitration, remain bound by whatever "judgmental" effect the arbitrator's decision has under § 1401. For instance, a plan sponsor could not, once having received an unfavorable arbitration decision, fail to seek to vacate or modify the award under § 1401(b)(2), and instead, attempt to litigate its case *de novo* pursuant to § 1451.

■ Third, we did not hold, as the defendants seem to say in ¶ 3(h) of their Motion, that only a plan sponsor may seek to vacate or modify an arbitration award under § 1401(b)(2). Either party to the arbitration may, pursuant to § 1401(b)(2), seek to vacate or modify the award by filing an action in the appropriate Federal district court.

■ Fourth, contrary to the defendants' assertion in ¶ 3(h) of their Motion, we do not believe that an employer may, in response to a plan sponsor's enforcement action under §§ 1401(b)(2) and 1451, raise issues as defenses to that action which it did not raise during the arbitration proceedings. A contrary conclusion would allow an employer, as well as a plan sponsor, to circumvent the requirement that all withdrawal liability disputes be submitted to arbitration. Here, the defendants argue that the plaintiff failed to prove its case because its only witness, besides Sheldon Mehrman, possessed no knowledge as to how the Fund arrived at its calculation of the defendants' withdrawal liability. Given the nature of this proceeding, however, the burden was upon the defendants to demonstrate some error in the Fund's calculation of their withdrawal liability; they introduced no such evidence, but instead, simply argue that the Fund's failure to introduce any evidence in support of its calculations entitles them to a judgment in their favor. Further, and much more importantly, as noted in our prior Memorandum at page 7, the record before us indicates that the only attack upon the Fund's assessment mounted by the defendants during the arbitration was their contention that the Fund had improperly treated them as a "commonly controlled group", thereby rendering them jointly and severally liable for the combined withdrawal liability of both entities. The record is devoid of any evidence that the defendants challenged the Fund's assessment in any other way. Since the defendants failed to attack the Fund's "mathematical" calculation of their withdrawal liability during the arbitration, the Fund's assessment, to this extent, became "fixed", and hence, at trial, the Fund had no obli-

gation to come forward with evidence in support of, *e.g.*, the acturial assumptions underlying its calculations. Our conclusion in this regard likewise negates the defendants' argument that, in accepting the Fund's "mathematical" calculation of their withdrawal liability, we applied an improper "presumption of correctness" violative of the Third Circuit's decision in *United Retail and Wholesale Employees Teamsters Union Local 115 Pension Plan v. Yahn and McDonnell, Inc.*, 787 F.2d 128 (3d Cir.1986), *aff'd.*, — U.S. —, 107 S.Ct. 2171, 95 L.Ed.2d 692 (1987). As can be seen, based on the foregoing discussion, we applied no such presumption to the Fund's "mathematical" calculations since the defendants failed to preserve this issue for "appeal" to this Court by not challenging this aspect of the Fund's calculations before the arbitrator; likewise, the arbitrator need not have applied any presumption of correctness to said mathematical calculations since the defendants simply did not dispute their validity before him. The only substantive issue which the defendants preserved for "appeal" to this Court was their contention that they were not a "commonly controlled group", and, as to this issue, we accorded the defendants *de novo* review.

Having addressed the "peripheral" challenges to our Memorandum and Order, we proceed to discuss the "substantive" attacks upon our decision.

The defendants first argue that we erroneously concluded that the plaintiff's action was timely filed. We see no need for a lengthy rehash of this aspect of our decision; simply stated, the defendants have presented no new arguments which persuade us that our conclusion that the plaintiff's action was timely filed is wrong. This is not to say that reasonable minds could not differ on this issue, and, as is often the case, the reasonable minds on the court above us may indeed find much fault with the reasoning in support of our conclusion. Given the complete absence of case law on this particular issue, we wholeheartedly agree that the question merits appellate review. This still does not change the fact that we cannot accept the interpretation of § 1401(b)(2) urged upon us by the defendants.

The defendants next dispute our conclusion that Sheldon Mehrman can be subjected to a judgment in this action, when, as they contend, he was never given the statutory notice required by 29 U.S.C. § 1399, nor was he a party to the arbitration proceedings which preceded this action. Our reasons for disagreeing with these contentions are, we believe, fully explained in our prior Memorandum. The only new point raised by Sheldon Mehrman is his argument that to subject him to liability under the facts of this case would deprive him of his right to due process. We find no due process issue of a constitutional dimension involved in this question, however. As far as *this action* is concerned, Sheldon Mehrman received the procedural due process to which he was entitled. What he is, in fact, arguing is that he did not receive the notice and opportunity to be heard statutorily prescribed by §§ 1399 and 1401(a). Regardless of whether the issue is couched in terms of constitutional due process or adherence to statutorily mandated procedures, we believe that Sheldon Mehrman, given the facts of this case, received the notice due him under § 1399 and was, if not in form, then certainly in substance, a party to the arbitration proceedings held pursuant to § 1401(a). We find it somewhat incredulous for Sheldon Mehrman to claim that he did not know that the Fund was seeking to hold him personally liable when it was he, through his counsel, that requested the Fund to separate its assessment of Sheldon Hall Clothing, Inc.'s, and "Meyer D. Mehrman's" combined withdrawal liability as a "commonly controlled group", *see* Joint Exhibit #1, into its two, respective component parts as if the two entities were not a "commonly controlled group", *see* defendants' Exhibit #1. If Sheldon Mehrman did not believe that the Fund was seeking to hold the owner of the sole proprietorship liable, we can only ask what entity did he think the Fund was attempting to assess withdrawal liability upon besides Sheldon Hall Clothing, Inc. If Sheldon Mehrman thought that the Fund was seeking to collect withdrawal liability from the sole proprietorship, he certainly realized that it was seeking to hold him

individually liable since a "sole proprietorship" is simply a phrase denoting an individual operating a business in an unincorporated form. If, on the other hand, Sheldon Mehrman believed that the Fund was seeking to hold his deceased father, Meyer D. Mehrman, the founder of the business, liable, an argument, we note, that he never specifically makes, then upon what authority did he retain counsel to represent his father's estate and upon what authority did counsel purport to represent "Meyer D. Mehrman". As can be seen, Sheldon Mehrman certainly well knew that the Fund was seeking to assess withdrawal liability upon him as the owner of the sole proprietorship.

Since the issuance of our decision, we have also come to recognize another reason which prevents Sheldon Mehrman from escaping liability in this action. As noted by the Third Circuit Court of Appeals in *IUE AFL–CIO Pension Fund v. Barker & Williamson,* 788 F.2d 118 (3d Cir.1986), notice of withdrawal liability to one member of a "commonly controlled group" constitutes notice to all of the group's members. Therefore, given our conclusion that Sheldon Hall Clothing, Inc., and the sole proprietorship formed a "commonly controlled group", the notice of withdrawal liability served upon Sheldon Hall Clothing, Inc., constituted notice to Sheldon Mehrman, the owner of the sole proprietorship, as well. Accepting Sheldon Mehrman's argument that he was not a party to the arbitration, and thus, cannot be subjected to an enforcement action under § 1401(b)(2), and assuming that Sheldon Mehrman, as a member of the control group, possessed some right to request review of the Fund's calculation under § 1399 and/or arbitration under § 1401(a) independent of the same statutory rights possessed by Sheldon Hall Clothing, Inc., an assumption the validity of which seems doubtful given the fact that Sheldon Mehrman and Sheldon Hall Clothing, Inc., must be treated as but a single employer, Sheldon Mehrman, as he would have it, made no such request for review under § 1399, nor, more importantly, did he request arbitration under § 1401(a). Given these facts and assumptions, the Fund's calculation of the group's liability became "fixed" as to

Sheldon Mehrman as an individual and as one of the members of the control group by virtue of § 1401(b)(1), which, we note, contains no thirty (30) day time limit for bringing an action thereunder. In sum, even accepting Sheldon Mehrman's argument that no arbitration award was ever rendered against him, the plaintiff would still be entitled to the same judgment which we have already entered against Sheldon Mehrman.

Third and finally, the defendants argue that we erred in applying a "double interest" rate of 20% per annum to the Fund's assessment of their withdrawal liability. The defendants state in their memorandum of law that they are unable to determine the authority for the imposition of interest at such a rate. The authority which the defendants seek can be found in our prior Memorandum. As we stated there, we were *required* to award the plaintiff interest at such a rate, as well as attorney's fees, since § 1451(b) requires that the plaintiff's action be treated as one to collect delinquent contributions to the Fund under 29 U.S.C. §§ 1132 and 1145.

In sum, the defendants have proffered no new arguments which convince us that we erred in entering judgment in the plaintiff's favor. Hence, we deny their Motion For Reconsideration.