**TRUSTEES OF the AMALGAMATED INSURANCE FUND**

v.

**SHELDON HALL CLOTHING, INC. and Sheldon Mehrman, t/a Meyer D. Mehrman & Son and Sheldon Mehrman, Appellants.**

No. 88–1184.

United States Court of Appeals,
Third Circuit.

Argued Sept. 16, 1988.

Decided Dec. 8, 1988.

Rehearing and Rehearing In Banc Denied
Jan. 5, 1989.

Henry S. Perkin (argued), Perkin, Rapoport, Schattenstein & Feldman, Allentown, Pa., for appellants.

Alan F. Markovitz (argued), Markovitz & Meo, Philadelphia, Pa., for appellee.

Before BECKER, HUTCHINSON and SCIRICA, Circuit Judges.

OPINION OF THE COURT

SCIRICA, Circuit Judge.

This appeal arises under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), Pub.L. No. 96–364, 94

Stat. 1208 (codified in scattered sections of 5, 26 & 29 U.S.C.). The principal question raised is whether, under 29 U.S.C. § 1401(b)(2), a pension plan qualified under MPPAA that wins an arbitration award against a withdrawing employer must file an action in federal district court to confirm the award within 30 days or forever be barred from execution. We hold it does not and we will affirm the judgment of the district court.

Due to an apparent contradiction between the provisions of this complex statute, we believe a brief analysis of the MPPAA is necessary.

### I.

The MPPAA was enacted as an amendment to the Employee Retirement Income Security Act of 1974, Pub.L. No. 93–406, 88 Stat. 1020 ("ERISA") (codified as amended at 29 U.S.C. §§ 1001–1461 (1982)), and was intended, in part, to discourage employers from withdrawing from multiemployer pension plans and, thus, leaving those plans with unfunded liabilities. H.R.Rep. No. 869, 96th Cong., 2d Sess. 67, *reprinted in* 1980 U.S.Code Cong. & Admin.News 2918, 2935. It does so by imposing upon the withdrawing employer a mandatory liability, defined in the statute as the employer's adjusted "allocable amount of unfunded vested benefits." 29 U.S.C. § 1381(b)(1).

Upon an employer's withdrawal from a pension plan, the plan's trustees determine the amount of the withdrawal liability. 29 U.S.C. § 1381. The trustees then notify the employer of both the amount of liability and a schedule for payments, and make a formal demand for payment. 29 U.S.C. § 1399(b)(1). After the employer receives notice of the amount of its withdrawal liability, it may, within ninety days, request review by the plan's trustees. 29 U.S.C. § 1399(b)(2)(A). If a dispute persists after review, then either party may initiate arbitration proceedings. 29 U.S.C. § 1401(a)(1).

Section 1401(b)(2) provides for review of the arbitrator's award by the district court:

Upon completion of the arbitration proceedings in favor of one of the parties, any party thereto may bring an action, no later than 30 days after the issuance of an arbitrator's award, in an appropriate United States district court in accordance with section 1451 of this title to enforce, vacate, or modify the arbitrator's award.

An aggrieved party, however, need not go to arbitration. Section 1451 creates an independent cause of action in federal district court for any party to a multiemployer plan "who is adversely affected by any act or omission" under the MPPAA. Section 1451(f) provides:

An action under this section may not be brought after the later of—(1) 6 years after the date on which the cause of action arose, or (2) 3 years after the earliest date when the plaintiff acquired or should have acquired actual knowledge of the existence of such cause; except that in the case of fraud or concealment, such action may be brought not later than 6 years after the date of discovery of the existence of such cause of action.

These two sections, on their face, appear to contradict each other. Section 1401(b)(2) provides in one clause for a 30–day limitation period and yet, in the next clause, limits itself to the terms of § 1451, which provides for a three- or six-year limitation period.

### II.

Appellant Sheldon Hall Clothing, Inc. ("SHC"), was a Pennsylvania corporation, with Sheldon Mehrman as its president and sole shareholder. Appellant Meyer D. Mehrman & Son ("MMS"), was a sole proprietorship founded by Sheldon Mehrman's father, but solely owned and operated by Sheldon Mehrman at all times relevant to this case. In the Fall of 1981, both entities went out of business.

By letter dated December 28, 1981, appellees Trustees of the Amalgamated Insurance Fund ("the Trustees") notified the appellants of withdrawal liability in the amount of $238,198.75. The letter was addressed in the following manner:

Sheldon Mehrman, President

Sheldon Hall Clothing, Inc./Meyer D. Mehrman

418 North Franklin Street

Allentown, PA 18102

App. at 24.

Following a review and reaffirmation of the withdrawal liability, the Trustees demanded arbitration against SHC and "Meyer D. Mehrman." Sheldon Mehrman appeared at the arbitration hearing with counsel, David Schattenstein, an attorney who had been retained by him. On October 27, 1983, the arbitrator awarded the Trustees the full $238,198.75 it had claimed, plus legal fees. App. at 38. Oddly, the arbitrator's Findings and Award indicated that appearances were made for SHC and MMS by "David C. Schattenstein and Meyer D. Mehrman." App. at 36.

On November 28, 1983, 30 days after the arbitrator made his award,[1] the Trustees brought suit in United States District Court for the Southern District of New York to enforce the award pursuant to 29 U.S.C § 1401(b)(2). For reasons which do not appear on the record before us, the New York district court dismissed the Trustees' action without prejudice on December 7, 1984.

More than a year later, on December 18, 1985, the Trustees instituted a second action to enforce the arbitrator's award in the United States District Court for the Eastern District of Pennsylvania. The Pennsylvania district court ruled in favor of the Trustees on Januaray 12, 1988, awarding $490,643.65 ($238,198.75 plus "double interest," at the rate of 20% per annum, plus legal costs), 683 F.Supp. 986. This appeal followed.

### III.

Appellants principal contention is that the Trustees filed their action out of time—specifically, after the 30–day period prescribed by 29 U.S.C. § 1401(b)(2) had elapsed. The Trustees respond that the applicable time limitation is either three or six years under § 1451(f) and therefore the action to enforce was timely filed.

Which time limitation applies is a matter of legislative intent. To determine intent, we must examine both the statutory language and the policy behind it. *Robert T. Winzinger, Inc. v. Management Recruiters*, 841 F.2d 497, 498 (3d Cir.1988). Unfortunately, the recorded legislative history is sparse and provides no guidance on this point. *See* H.R.Rep. No. 869, 96th Cong.2d Sess., *reprinted in* 1980 U.S.Code Cong. & Admin.News 2918. As we have already observed, the statutory language appears contradictory. Nonetheless, it is a canon of statutory construction that a statute should be interpreted, wherever possible, to give effect to all of its component parts. *Mountain States Tel. & Tel. Co. v. Santa Ana*, 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979). We must therefore look not merely to a particular clause, but to the statute as a whole, while simultaneously attempting to give effect to the MPPAA's purpose of protecting the assets of multi-employer pension plans. *Stafford v. Briggs*, 444 U.S. 527, 535, 100 S.Ct. 774, 780, 63 L.Ed.2d 1 (1980) (quoting *Brown v. Duchesne*, 60 U.S., (19 How.) 183, 194, 15 L.Ed. 595 (1857)).

The only logical construction of the MPPAA is for § 1401(b)(2)'s 30–day limitation to apply only to actions to modify or vacate the arbitrator's award, while the

---

1. The Trustees filed their petition by leaving it in the night depository for the Clerk of the Court of the Southern District of New York after 5:00 P.M. on the night of November 28, 1983. General Rule 1(a) of the Southern District of New York provides that papers so deposited are considered filed as of the following business day. Consequently, appellants originally contended that the Trustee's papers were not deemed filed until November 29—31 days after the arbitrator made his award. Since the

district court issued its ruling, however, the United States Court of Appeals for the Second Circuit has ruled that, despite General Rule 1(a), papers are deemed filed with the Clerk of the Court of the Southern District of New York at the actual time they are placed in the night depository. *Greenwood v. State of N.Y. Office of Mental Health*, 842 F.2d 636, 639 (2d Cir. 1988). Given our holding, however, this fact is not controlling.

three- or six-year limitation of § 1451(f) applies to actions to confirm an arbitrator's award. Despite the fact that "enforce" is juxtaposed with "vacate" and "modify" in the text of § 1401(b)(2), we do not believe that Congress intended that pension plans be required to reduce favorable arbitration awards to judgment within 30 days upon pain of forever being barred from collecting the award.

To accept appellant's construction of the two statutes at issue here would run counter to common sense. It would permit, for example, an employer to comply with an arbitrator's assessment for a period exceeding 30 days after the issuance of the arbitrator's award and then stop making withdrawal liability payments. The fund would then be deprived of a remedy because it failed to seek "enforcement" of the arbitrator's award within the 30-day time period prescribed by § 1401(b)(2). It thus seems clear, when attempting to give effect to all of the statute's component parts, that Congress did not intend that the arbitration provision of § 1401 be used to enforce an arbitrator's award.

We also note that pension plans might forego arbitration entirely if it meant exchanging the three-or six-year limitation period under § 1451(f) for a 30-day limitation period under § 1401(b)(2). This would undermine Congress' clearly expressed preference for self-regulation of the MPPAA through arbitration. *Republic Industries v. Central Pa. Teamsters*, 693 F.2d 290, 294–95 (3d Cir.1982).

■ Given our conclusion that actions to enforce an arbitrator's award under the MPPAA is governed by the three- to six-year limitation period of § 1451(f), we find that the Trustees' action was timely filed.

### IV.

Appellants also contend that the district court erred by assessing interest on their withdrawal liability at a rate of 10% per annum, plus an additional 10% per annum in damages, for an effective interest rate of 20%.[2]

■ 29 U.S.C. § 1451(b) provides that in an action under § 1451 to compel payment of withdrawal liability, any failure by the employer to make a payment on time shall be treated in the same manner as a delinquent contribution within the meaning of 29 U.S.C. § 1145. As we have already held in *Penn Elastic Co. v. United Retail & Wholesale Emp.*, 792 F.2d 45, 47 (3d Cir. 1986), the relevant costs provision for actions under § 1145 is 29 U.S.C. § 1132(g)(2), which provides in part:

(2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A). . . .

Section 1132(g)(2)(C) goes on to provide that the court shall apply the interest rate prescribed by the terms of the pension plan itself which, in this case, is ten percent. Under subparagraph (C), the court should then award an additional amount equal to the lesser of the interest on the unpaid amounts or liquidated damages provided for under the plan. Here, adding an amount equal to the original ten percent interest—leading to an effective interest rate of twenty percent per annum—was correct. Moreover, we note that award of these amounts plus reasonable attorney's fees is mandatory for the district court, not discretionary. *Penn Elastic Co.*, 792 F.2d at 47; *United Retail & Wholesale Employees Teamsters Union Local No. 115*

**2.** Appellants do not challenge the calculation of the principal amount of the withdrawal liability.

*Pension Plan v. Yahn & McDonnell*, 787 F.2d 128, 134 (3d Cir.1986), *aff'd by an equally divided Court, Pension Ben. Guaranty Corp. v. Yahn & McDonnell*, 481 U.S. 735, 107 S.Ct. 2171, 95 L.Ed.2d 692 (1987) (per curiam).

## V.

Finally, Sheldon Mehrman contends that the award of withdrawal liability cannot be enforced against him individually because he neither received notice as an individual nor did the arbitration award contain findings against him individually. We find this argument lacks merit.

■ Sheldon Mehrman's own testimony at the arbitration hearing established that he was the owner of MMS, a sole proprietorship. The District Court properly concluded that MMS and SHC constituted a commonly controlled group and Sheldon Mehrman has not appealed this finding.[3] Notice to one member of a commonly controlled group constitutes notice to every member of that group. *IUE AFL–CIO Pension Fund v. Barker & Williamson*, 788 F.2d 118, 127 (3d Cir.1986). Even with the confusion between the names "Meyer D. Mehrman" and "Sheldon Mehrman," the December 28, 1981, letter constituted proper legal notice to at least SHC. Therefore, MMS had legal notice as well.[4]

Similarly, under ERISA, companies under common control are jointly and severally liable for one another's debts. 29 U.S.C. § 1301(b)(1); *Teamsters Pension Trust Fund v. H.F. Johnson*, 830 F.2d 1009, 1013 (9th Cir.1987). Congress explicitly provided for individual liability of employers who operate as sole proprietors in 29 U.S.C. § 1405(c):

> To the extent that the withdrawal liability of an employer is attributable to his obligation to contribute to or under a plan as an individual (whether as a sole proprietor or as a member of a partnership), property which may be exempt from the estate under section 522 of Title 11 or under similar provisions of law, shall not be subject to enforcement of such liability.

Section 1405(c) protects only those assets which would be exempt under the Bankruptcy Code from being used to satisfy withdrawal liability of sole proprietors. The clear implication, therefore, is that other personal assets of an individual which are not exempt under the Bankruptcy Code may be used to satisfy a sole proprietor's withdrawal liability. The legislative history of § 1451(c) confirms this view:

> The Committees recognize that some employers that are obligated to contribute to multiemployer plans are individuals, i.e. sole proprietors or partners. The Committees believe that if such an employer withdraws from a multiemployer plan, some of the employer's personal assets, such as his residence, should be shielded from employer liability. A special rule provides that where the withdrawn employer is an individual, the employer's personal assets that would be exempt under bankruptcy law will be protected from employer liability.

126 Cong.Rec. S20195 (daily ed. July 29, 1980). We note that individual liability in this context is consistent with the general rule that a sole proprietor is personally

---

**3.** Section 1301(b)(1) provides in part that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." *See also Yahn & McDonnell*, 787 F.2d at 131 n. 2.

To determine whether two or more employers constitute a commonly controlled group within a withdrawal liability dispute, the MPPAA incorporates the Internal Revenue Code's definition a "controlled group of corporations." *IUE AFL–CIO Pension Fund v. Barker & Williamson*, 788 F.2d 118, 123 (3d Cir.1986) (referring to 26 U.S.C. § 1563(a)(1) (1982)).

**4.** We believe that a letter personally addressed to "Sheldon Mehrman, President" of "Meyer D. Mehrman" constituted sufficient legal notice in any event. Moreover, Sheldon Mehrman not only retained an attorney to represent "Meyer D. Mehrman" at the arbitration hearing, he appeared at the hearing personally. At no time did either Sheldon Mehrman or his attorney ever attempt to correct the misunderstanding. In sum, Sheldon Mehrman has been aware of, and fully participated in, this litigation from the outset. Therefore, we find the argument disingenuous that Sheldon Mehrman had no notice of the controversy.

liable for all debts of the business; the proprietor's personal assets and the proprietorship's business assets are legally a single financial estate. *See, e.g., Securities and Exchange Commission v. W.L. Moody & Co.,* 374 F.Supp. 465, 472 (S.D.Tex.1974), *affd,* 519 F.2d 1087 (5th Cir.1975); *Securities and Exchange Commission v. Wick,* 360 F.Supp 312, 315 (N.D.Ill.1973).

Consequently, even if there were some technical error of process with regard to Sheldon Mehrman personally, as the sole proprietor of MMS, he is jointly and severally liable for any withdrawal liability owed by either MMS or SHC.

## VI.

For the reasons discussed, we will affirm the judgment of the district court.

Costs taxed against the appellant.