**TEAMSTERS PENSION TRUST FUND OF PHILADELPHIA AND VICINITY, et al., Plaintiffs,**

**v.**

**DOMENIC CRISTINZIO, INC., et al., Defendants.**

**Civil Action No. 96–6596.**

United States District Court, E.D. Pennsylvania.

Feb. 24, 1998.

Kent Cprek, Philadelphia, PA, for Plaintiffs.

Samuel H. Israel, Philadelphia, PA, Gerald J. McConomy, Exton, PA, Ira B. Silverstein, Philadelphia, PA, for Defendants.

## ORDER AND MEMORANDUM

ANITA B. BRODY, District Judge.

Plaintiffs Teamsters Pension Trust Fund of Philadelphia and Vicinity and William J. Einhorn (jointly, "Pension Fund") have sued defendants Domenic Cristinzio, Inc. ("Cristinzio"), Delaware Valley Car and Truck Leasing, The Russell G. Taddei and Donald R. Taddei Building Partnership, Systems Furniture Installations, Inc. (jointly, "Control Group"), and Russell G. Taddei ("Taddei," or jointly with Cristinzio and Control Group, "defendants"), for withdrawal liability arising under the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1461.[1] The plaintiffs have filed a motion for summary judgment; the defendants oppose the motion on a number of grounds. For the reasons stated below, I will grant the plaintiffs' motion for summary judgment.

## I. Facts

The following facts are essentially undisputed. Plaintiff Teamsters Pension Trust Fund of Philadelphia and Vicinity is an employee pension benefit plan that provides retirement benefits to employees of contributing employers engaged in interstate commerce (Complaint, ¶ 4; Answer, ¶ 4). The Teamsters Pension Trust Fund is a Taft–Hartley trust fund established under 29 U.S.C. § 186(c)(5) and a multiemployer plan within the meaning of 29 U.S.C. § 1002. Plaintiff William J. Einhorn is a fiduciary of the Teamsters Pension Trust Fund within the meaning of 29 U.S.C. §§ 1002(21), 1451.

Prior to 1992, defendant Domenic Cristinzio, Inc. was a commercial moving business which, individually or through an employer association, was signatory to successive col-

---

1. Plaintiffs also named Donald R. Taddei and PRT, Inc. as defendants in their Complaint. These defendants have never responded to the lawsuit in any way. Accordingly, I granted a default judgment against these defendants in August 1997.

lective bargaining agreements from 1965 through 1992, with Local Union No. 513, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Each of these collective bargaining agreements required the payment of fringe benefit contributions to the Teamsters Pension Trust Fund (Einhorn Decl. ¶ 3 and Exs. 2–10). Defendants Russell G. Taddei and Donald R. Taddei acquired Cristinzio in 1971: each owned 50% of Cristinzio (Rosenthal Decl. ¶ 9 and Ex. 39). From the time Russell G. Taddei and Donald R. Taddei acquired Cristinzio until the passage of ERISA in 1974, Cristinzio's sole obligation with respect to the Plan was to make contributions at a fixed rate per hour per employee (Taddei Aff. ¶ 4). Cristinzio signed at least three additional collective bargaining agreements between 1980, when MPPAA was enacted and 1992, when Cristinzio withdrew from the pension fund(Taddei Aff. ¶ 3).

Defendants Russell G. Taddei and Donald R. Taddei also were general partners in defendants The Russell G. Taddei and Donald R. Taddei Building Partnership and Delaware Valley Car and Truck Leasing (Rosenthal Decl. ¶ 8 and Ex. 38). Russell G. Taddei and Donald R. Taddei each owned 50% of Systems Furniture Installations, Inc. (Rosenthal Decl. ¶ 8 and Ex. 38). The Russell G. Taddei and Donald R. Taddei Building Partnership owned the building in which Domenic Cristinzio, Inc. was located and operated and Cristinzio paid rent to the building partnership (Ex. 38). Delaware Valley Car and Trucking Leasing leased trucks to Cristinzio for use in its day-to-day operations, for which it received payment from Cristinzio (Ex. 38). The defendants have stipulated that the Russell G. Taddei and Donald R. Taddei Building Partnership, Delaware Valley Car and Truck Leasing, and Systems Furniture Installations, Inc. are trades or businesses under common control with Domenic Cristinzio,

Inc. so as to form a "single employer" under 29 U.S.C. § 1301(b) (Rosenthal Decl. ¶ 7 and Ex. 37).[2]

Cristinzio ceased operations and stopped making payments on May 12, 1992 (Einhorn Decl. ¶¶ 4, 5, and 6 and Exs. 11–20). On August 28, 1992, the Pension Fund sent a statutory demand letter to Cristinzio stating that the Pension Fund had determined that Cristinzio withdrew from the Pension Fund and incurred withdrawal liability (Einhorn Decl.¶ 6 and Ex. 11). On August 28, 1992, the Pension Fund also directly notified the Control Group and Russell G. Taddei of the Fund's determination that they were under common control with Cristinzio and were responsible for the payment of the withdrawal liability incurred by Cristinzio. (Einhorn Decl. ¶ 6 and Exhs. 12, 13, 14, and 15). On November 10, 1992, a revised demand for withdrawal liability was sent to Cristinzio (Einhorn Decl. at ¶ 6 and Ex. 16). Revised demand letters were sent to the Control Group and Russell G. Taddei on November 11, 1992 (Einhorn Decl. ¶ 6 and Exhs. 17, 18, 19, and 20). The revised withdrawal liability demand sought payment of unfunded vested benefits allocable to Cristinzio of $118,622.57, payable in nine quarterly installments of $15,247.97 and a final payment of $1,057.46 (Einhorn Decl. ¶ 6 and Exs. 16–20). The first installment of the withdrawal liability was due on January 9, 1993 (Einhorn Decl. ¶ 6 and Exs. 16–20).

The Pension Fund did not receive the initial payment, due on January 9, 1993, and, by letters dated February 3, 1993, the Pension Fund notified Cristinzio, the Control Group and Russell Taddei of their default and right to cure the default (Einhorn Decl. ¶ 7 and Exs. 21–25). In November 1993, Cristinzio requested a review of the withdrawal liability assessment from the Pension Fund (Einhorn Decl. ¶ 8 and Ex. 26).[3]

---

**2.** ERISA requires that all trades or businesses—whether or not incorporated—that are under "common control," as defined in regulations issued by the Pension Benefit Guaranty Corporation ("PBGC"), "shall be treated ... as a single employer." 29 U.S.C. § 1301(b)(1). Because a commonly controlled group of trades or businesses is to be treated as a single employer, each member of such a group is liable for the with-

drawal of any other member of the group. In determining whether a withdrawal has occurred, MPPAA explicitly provides that any transaction designed to "evade or avoid" withdrawal liability should be ignored. 29 U.S.C. § 1392(c).

**3.** Russell G. Taddei, on behalf of Domenic Cristinzio, Inc., had previously requested and received estimates of Cristinzio's withdrawal liabil-

Neither Cristinzio nor, any member of the Control Group or Russell Taddei has ever filed a demand for arbitration in connection with the withdrawal liability assessment (Einhorn Decl. ¶ 10). The deadline for seeking arbitration lapsed on May 22, 1993 under 29 U.S.C. § 1401(a)(1)(B). Nor have Cristinzio or any member of the Control Group or Russell Taddei made any payments toward the withdrawal liability (Einhorn Decl. ¶ 9).[4]

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. When the moving party does not bear the burden of persuasion at trial, as is the case here, its burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleading," *id.*, but must support its response with affidavits, depositions, answers to interrogatories, or admissions on file. *See Celotex*, 477 U.S. at 324; *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).

To determine whether summary judgment is appropriate, I must determine whether any genuine issue of material fact exists. An issue is "material" only if the dispute "might affect the outcome of the suit under the governing law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence favoring the nonmoving party is "merely colorable," "not significantly probative," or amounts to only a "scintilla," summary judgment may be granted. *See id.* at 249–50, 252; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)). Of course, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255; *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992). Moreover, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *see also Big Apple BMW*, 974 F.2d at 1363. Thus, my inquiry at the summary judgment stage is only the "threshold inquiry of determining

---

ity from the Pension Fund in February 1984, August 1988, and May 1992.

4. The total of the unpaid installments equals $138,289.19 (Exs. 16–20 and 34). Accrued interest on the unpaid withdrawal liability installment payments from the due date for payment of each installment, as calculated through July 14, 1997, is $51,557.67 (Rosenthal Decl. ¶ 2 and Ex. 34). Accrued interest on the principal amount of the withdrawal liability from January 9, 1993 through July 14, 1997 is $53, 811.21 (Rosenthal Decl. ¶ 2 and Ex. 35). Through July 14, 1997 the Pension Fund has incurred attorneys' fees of $22,361.24 and costs of $2,492.17 in connection with efforts to collect the withdrawal liability owed to the Pension Fund by Cristinzio, the Control Group, and the Taddeis (Rosenthal Decl. ¶ 3 and Ex. 36).

whether there is the need for a trial," that is, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 250–52.

## III. Discussion

Congress enacted the Employee Retirement Income Security Act ("ERISA") in 1974 to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 720, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984). ERISA's Title IV created a mandatory insurance program covering guaranteed benefits in case pension plans terminate without sufficient assets (29 U.S.C. § 1301 et seq.). This plan termination insurance program is administered by the Pension Benefit Guaranty Corporation ("PBGC").

The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), enacted by Congress with effective date of April 29, 1980, requires that an employer withdrawing from a multiemployer pension plan pay a fixed and certain debt to the pension plan. This withdrawal liability is the employer's proportionate share of the plan's "unfunded vested benefits," calculated as the difference between the present value of vested benefits and the current value of the plan's assets. *See* 29 U.S.C. §§ 1381, 1391. In the event of a complete or partial withdrawal from the Pension Fund by an employer, MPPAA mandates that the Pension Fund notify the employer of the amount of withdrawal liability and the schedule for payment and make a demand for payment in accordance with that schedule. 29 U.S.C. § 1399(b)(1). If an employer wishes to contest the fact of its liability or the calculated amount of liability, the employer must seek review by the Fund and initiate arbitration on a timely basis under 29 U.S.C. §§ 1399, 1401. The MPPAA specifically provides that "any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under [29 U.S.C. §§ 1381–1399] shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). The right to contest the assessment on the merits is waived if the employer fails to initiate arbitration on a timely basis. 29 U.S.C. § 1401(b)(1).

Pursuant to ERISA and MPPAA, plaintiffs move for summary judgment, arguing that: (1) defendants are statutorily liable for withdrawal liability as the withdrawing employer; and (2) Russell G. Taddei is personally liable for the withdrawal liability as a general partner of the Partnership, which forms part of Cristinzio's Control Group. The defendants contest the assessment of withdrawal liability, raising a number of statutory and constitutional issues.

### A. Assessment of Withdrawal Liability on Cristinzio

Plaintiffs assert that withdrawal liability was correctly assessed on Cristinzio because the Pension Fund in which Cristinzio participated is governed by MPPAA withdrawal liability provisions, and Cristinzio withdrew from the Pension Fund. Defendants respond that withdrawal liability was improperly assessed because their Pension Fund is not governed by the withdrawal liability provisions of MPPAA.

An employer who has been assessed withdrawal liability and disagrees with the pension fund's determination regarding withdrawal liability must initiate arbitration review proceedings within the time limits set forth in the MPPAA. *See IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.,* 788 F.2d 118, 128–30 (3d Cir. 1986). When an employer ignores its arbitration rights, MPPAA unambiguously provides that the liability is fixed and the employer's right to dispute the assessment is waived. *See id.; Teamsters Pension Trust Fund v. Malone Realty Co.,* 82 B.R. 346, 351 (E.D.Pa.1988); *O'Connor v. DeBolt Transfer, Inc.,* 737 F.Supp. 1430, 1435–39 (W.D.Pa. 1990). Although the Third Circuit has held that "under MPPAA there is no per se exhaustion requirement under which the court lacks jurisdiction to hear cases that have not first been before an arbitrator," *Dorn's Transportation Inc. v. Teamsters Pension Trust Fund,* 787 F.2d 897, 903 (3d Cir.1986),

it has also explicitly established that "where the issue of statutory interpretation 'involves only a MPPAA section that Congress explicitly reserved for arbitration,' arbitration is the appropriate route for resolution of the dispute." *Colteryahn,* 847 F.2d at 123 (citing *Flying Tiger Line v. Teamsters Pension Trust Fund of Phila.,* 830 F.2d 1241, 1244 (3d Cir.1987)).

Here, neither Cristinzio nor any member of the Control Group ever requested arbitration. (Einhorn Decl. ¶ 10). The deadline for seeking arbitration lapsed on May 22, 1993 under 29 U.S.C. § 1402(a)(1)(B).[5] I find that because Cristinzio waived its right to contest the assessment of withdrawal liability by its failure to seek arbitration in a timely manner, the Pension Fund is governed by MPPAA withdrawal liability provisions and Cristinzio withdrew from the Pension Fund. *See* 29 U.S.C. § 1401(a)(1) ("Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under [29 U.S.C.A. §§ 1381–1399] shall be resolved through arbitration.").

■ Furthermore, even if it had not waived its right to contest the assessment of withdrawal liability, I would reach the same conclusion regarding defendants' liability under MPPAA. The parties dispute the characterization of the Pension Fund. Plaintiffs assert that the Pension Fund is a "defined benefit plan." Defendants, on the other hand, argue that the Pension Fund, because it is a Taft–Hartley Plan, is not a "defined benefit plan" and, therefore, is not subject to MPPAA withdrawal liability.[6] However, defendants cite no legal authority for the propositions that MPPAA withdrawal liability applies only to defined benefit plans or does not apply to a hybrid plan.[7] The Supreme Court has said that it is an open question whether a hybrid Taft–Hartley Plan, like the one at issue here, is a defined benefit plan subject to Title IV of ERISA. *Concrete Pipe and Prods. of CA, Inc. v. Construction Laborers Pension Trust for So. Cal.,* 508 U.S. 602, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993). The Third Circuit has not addressed the issue.

The key issue, as Judge Padova pointed out when presented with the same argument regarding the characterization of a Taft–Hartley Plan, by the defendants in *Lyons v. Raymond Rosen & Co,* is whether the Plan at issue is governed by the withdrawal liability provisions of MPPAA: characterization of a Plan as either "defined benefit" or "defined contribution" is not essential to this determination. *Lyons,* 1994 WL 129955, at *3–5 (E.D.Pa.) Because both parties in the instant case agree that the Pension Fund is a "multiemployer plan," and that defendants withdrew from it, this withdrawal is governed by MPPAA. *See* 29 U.S.C. 11381(a) ("If an employer withdraws from a multiemployer plan in complete withdrawal ..., then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability."). *See also Connolly v. Pension Benefit Guaranty Corporation,* 581 F.2d 729, 732 (9th Cir.1978) (finding that a multiemployer Taft–Hartley pension plan was a defined benefit plan); *Lyons,* 1994 WL 129955 at fn. 12 ("MPPAA does not expressly exempt any specific type of multiemployer

---

5. MPPAA states that either party may initiate arbitration within a sixty day period beginning either after the plan trustees' response to the employer's request for review, or 120 days after the date of the employer's request for review of withdrawal calculations. *See* 29 U.S.C. § 1401(a)(1). Both parties may jointly initiate arbitration within the 180 day period after the date of the plan trustees' initial demand. *Id.*

6. The statute defines a "defined benefit plan" as one which has fixed benefits, while employers' contributions may vary. 29 U.S.C. § 1002(35). In a "defined contribution plan," the employers' contribution is fixed. 29 U.S.C. § 1002(34). A Taft–Hartley Plan has elements of both, because it requires employers to contribute at a fixed rate, while providing for defined benefits.

7. The only exclusion from withdrawal liability is in 29 U.S.C. § 1321(b)(1), which excludes individual account plans; the statute is clear that an individual account plan does not include a plan under which a fixed benefit is promised if the employer or his representative participated in the determination of that benefit. 29 U.S.C. § 1321(b)(1). The Teamsters Pension Trust Fund provides fixed benefits to employees, these benefits are set by the union and employer trustees for the Pension Fund in accordance with 29 U.S.C. § 186(c)(5) (see Exs. 40 and 41). Cristinzio expressly authorized the employer association and its designated trustees to establish these benefits.

pension plans from its withdrawal liability provisions. Accordingly, the classification of a particular plan as a 'defined benefit plan' or a 'defined contribution plan' provides no useful purpose in terms of the real issue"). There is no genuine issue of material fact here: The Pension Fund at issue is governed by MPPAA withdrawal liability provisions and withdrawal liability was correctly assessed on the defendants pursuant to the governing statutes.

### B. Taddei's Liability

█ Plaintiffs contend that Russell G. Taddei is personally liable for the withdrawal liability of Cristinzio, in his capacity as a general partner in two of the Partnerships (namely, The Russell G. Taddei and Donald R. Taddei Building Partnership and Delaware Valley Car & Truck Leasing) which form the Control Group. Taddei contests personal liability on the ground that individual shareholders and officers are not "employers" under ERISA.

Title IV of ERISA states that "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be withdrawal liability." 29 U.S.C. § 1381(a). The word "employer" is not defined in Title IV.[8] Courts of Appeals have tended to find that corporate officers are not liable for ERISA violations as "employers". *See Solomon v. Klein,* 770 F.2d 352, 354 (3d Cir.1985) (finding no indication that Congress intended to expose corporate officers to liability for their employers' violations of ERISA); *see also Connors v. P & M Coal Co.,* 801 F.2d 1373 (D.C.Cir.1986) (holding that owner-officers of a coal company were not personally liable for the company's withdrawal from a multiemployer pension plan,

merely because of their interest or control; the corporate veil could be pierced in this context, as in most others, only on showing of fraud, etc).[9]

However, Taddei is personally liable for the withdrawal liability not as a shareholder or officer, but as a general partner. Taddei's status as a partner subjects him, individually, to the liability of both of the Partnerships in the Control Group because "the proprietor[s' or partners']personal assets and the proprietor[s' or partners'] business assets are legally a single financial estate." *Trustees of the Amalgamated Ins. Fund v. Sheldon Hall Clothing,* 862 F.2d 1020, 1025 (3d Cir.1988). The Russell G. Taddei and Donald R. Taddei Building Partnership and Delaware Valley Car and Truck Leasing, of which Taddei is a general Partner, are jointly and severally liable for withdrawal liability of Cristinzio because Cristinzio and the Partnerships are a "group of trades or businesses under common control," as stipulated to by both parties.

Congress did not preclude the possibility of individual liability for partners under MPPAA. Although 29 U.S.C. § 1381 is silent as to whether persons other than employers may be liable for withdrawal payments, 29 U.S.C. § 1405(c) provides "[t]o the extent that the withdrawal liability of an employer is attributable to his obligation to contribute to or under a plan as an individual (whether as a sole proprietor or as a member of a partnership), property which may be exempt from the estate under section 522 of Title 11 or under similar provisions of law, shall not be subject to enforcement of such liability." Therefore, although MPPAA contemplates individual withdrawal liability where the employer is a sole proprietorship or partnership, MPPAA does not expressly

---

8. Title I of ERISA does define employer ("any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). "Person" is also defined: "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9)). However, the definitions in Title I are prefaced

by the phrase, "For purposes of this subchapter." Even if the definitions of Title I were to be applied to Title IV, the definition of "person" does not include "corporate officer" or "shareholder."

9. Taddei could be held liable as a shareholder or officer only if there were allegations that would allow piercing of the corporate veil: no such allegations have been made here.

create such liability. The liability stems from partnership law. Absent any limitation in the partnership agreement, partners are personally liable for obligations of the partnership. *See* Uniform Partnership Act § 17.

The Third Circuit has not ruled on whether partners in a control group entity may be held personally liable for MPPAA withdrawal liability. However, district courts have found partners personally liable for withdrawal liability under MPPAA. *See, e.g.,Lyons,* 1994 WL 129955, at *7–8 (holding individual partners liable, not because of their status as corporate shareholders and officers of the Company, but as partners of the Partnership, which was jointly and severally liable for withdrawal liability of the Company by virtue of the fact that the Company and the Partnership formed a control group); *United Food & Commercial Workers Union v. Progressive Supermarkets,* 644 F.Supp. 633, 642 (D.N.J.1986) (personal liability for partners). Furthermore, in *Trustees of Amalgamated Ins. Fund v. Sheldon Hall Clothing, Inc.,* 862 F.2d 1020 (3d Cir.1988), *cert denied,* 490 U.S. 1082, 109 S.Ct. 2104, 104 L.Ed.2d 665 (1989), the Third Circuit enforced a withdrawal liability award against the owner of a sole proprietorship, because a sole proprietor is personally liable for all debts of the business. *See* 29 U.S.C. § 1405(c). Under the same logic, a partner would be liable for withdrawal liability assessed against the partnership.

The only factual difference between the instant case and the other cases in which partners have been assessed withdrawal liability is that Russell Taddei formed the Partnerships in 1971–72, several years prior to the enactment of ERISA. However, Taddei could have changed the corporate form at any time, and by forming a Partnership he elected certain benefits as well as certain liabilities. *See, e.g., Connors v. Petitte Bros. Mining Co., Inc.,* 70 F.3d 637 (1995) (noting that partners could have avoided personal liability by incorporating). Furthermore, although Taddei and his Partner might have expected that they would not have withdrawal liability at the time they formed the Partnership, and so the Control Group, in 1971–72, it is not reasonable for Taddei to expect this to last forever, given the ongoing legisla-

tive concern with Pension plans and the Partnership's repeated execution of collective bargaining agreements following the enactment of ERISA and MPPAA. *See Connolly,* 475 U.S. at 226.

## C.  Constitutional Issues

Defendants contest the assessment of withdrawal liability on constitutional grounds, arguing that it is unconstitutional to impose withdrawal liability on an employer who joined a multiemployer pension plan, and formed their Control Group, before ERISA was enacted. Plaintiffs reply that defendants' constitutional objections are specious, because the collective bargaining agreements expressly authorize withdrawal liability; every collective bargaining agreement from 1965 to the time of withdrawal gave blanket authorization to the trustees' actions. Furthermore, plaintiffs say that the fact that defendants joined the Pension Fund prior to the enactment of ERISA and MPPAA makes no difference because the defendants voluntarily executed new union contracts post-enactment.

### 1.  *Due Process Clause*

Defendants maintain that, as applied in this case, the imposition of withdrawal liability is violative of their substantive due process rights as guaranteed by the Fifth Amendment. The Supreme Court has twice upheld MPPAA withdrawal liability provisions against challenges under the Due Process Clause of the Fifth Amendment. *Concrete Pipe,* 508 U.S. at 641; *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984). The defendants here maintain that their due process argument is not foreclosed by the decisions in *Gray* and *Concrete Pipe,* because, unlike the employers in those cases, they joined the Pension Fund well before the passage of ERISA and MPPAA.

The Supreme Court has articulated the appropriate standard for reviewing claims of substantive due process violations:

"[L]egislative acts adjusting the burdens and benefits of economic life come to the Court with the presumption of constitutionality, and that the burden is on one complaining of a due process violation to

establish that the legislature has acted in an arbitrary and irrational way . . .

[I]t may be that the liability imposed by the Act ... was not anticipated at the time of actual employment. But our cases are clear that legislation readjusting rights and burdens is not unlawful because it upsets otherwise settled expectations.... This is true even though the effect of the legislation is to impose a new duty or liability based upon past acts...."

*Concrete Pipe,* 508 U.S. at 637(citations omitted).

With respect to MPPAA withdrawal liability provisions, the Supreme Court has set forth the appropriate test for rationality under the Due Process Clause of the Fifth Amendment: "When the withdrawing employer's liability to the plan is based on the proportion of the plan's contributions ... provided by the employer during the employer's participation in the plan, the imposition of withdrawal liability is clearly rational." *Concrete Pipe,* 113 S.Ct. at 2287.

In the instant case, liability is calculated under the "presumptive" method outlined in 29 U.S.C. § 1391(b)(1). The Pension Fund determined the change in "unfunded vested benefit" liability each year; the annual change is then allocated to each employer based on the ratio of the employer's contributions to total contributions in the prior five years. Accordingly, Cristinzio's withdrawal liability to the Pension Fund is based upon the proportion of the Pension Fund's contributions provided by Cristinzio during its participation in the Pension Fund.

Defendants argue that the imposition of withdrawal liability is irrational because when Cristinzio joined the Plan, (1) the prospect of withdrawal liability was not in existence; (2) the company's obligation was expressly limited to fixed sum contributions to the plan under the terms of the collective bargaining agreement; and (3) the company had no input into establishing the critical features of the plan, including the benefit levels. The same arguments were raised in *Lyons* and rejected by Judge Padova because the defendants, like the defendants in the instant case, had renewed their collective bargaining agreements after the enactment

of ERISA and MPPAA, suggesting that they had accepted the prospect of withdrawal liability. 1994 WL 129955, at *11. Furthermore, the Supreme Court, in the context of a substantive due process challenge to the application of MPPAA, has expressly rejected the second and third arguments, that the collective bargaining agreement limited the defendants' liability to its contributions and that the defendants took no part in setting the "critical features" of the Plan. *Concrete Pipe,* 508 U.S. at 639–41.

The instant case is distinct from *Concrete Pipe, Gray,* and *Lyons* in that not only did Cristinzio join the Pension Fund prior to the enactment of ERISA, but also the defendants formed the Control Group, and so assumed liability, before the enactment of ERISA. However, the timing of the formation of the Control Group does not alter the outcome of the substantive due process analysis, because the defendants here signed three additional collective bargaining agreements between the enactment of MPPAA in 1980 and their withdrawal from the pension fund in 1992. Thus, the defendants' expectations changed each time they executed another collective bargaining agreement. Although the defendants here had less information at the time they formed their Control Group than defendants who, as in *Lyons,* formed a corporate entity post-ERISA, nonetheless, the defendants could have assessed and reassessed the implications of the withdrawal liability on the Control Group each time they executed a new bargaining agreement. The imposition of withdrawal liability on the Control Group is rationally related to the terms of the Pension Plan that Cristinzio joined in 1965.

### 2. *Takings Clause*

■ There is no set formula for identifying a "taking" forbidden by the Fifth Amendment. Rather, in evaluating a constitutional challenge to the application of a government regulation based on the Takings Clause, the court must inquire into the facts of the specific case. The Supreme Court has identified three factors of particular significance: the character of the government action; the economic impact of the regulation on the claimant; and the extent to which the government

regulation has interfered with distinct investment-backed expectations. *Concrete Pipe*, 113 S.Ct. at 2290–91.

As to the first factor, defendants here do not raise arguments with respect to the character of the governmental action. Furthermore, the character of the government action does not change with respect to different employers who are subjected to withdrawal liability because the focus in each case is the government's action of imposing withdrawal liability. *See Lyons*, 1994 WL 129955, at *12. Therefore, the analysis set forth in *Concrete Pipe* applies with equal force to this case: the MPPAA's withdrawal liability is an "interference with the property rights of an employer aris[ing] from a public program that adjusts the benefits and burdens of economic life to promote the common good, and, under our cases, does not constitute a taking requiring government compensation." 113 S.Ct. at 2290.

As to the second factor, the Supreme Court recognized that the economic impact of the withdrawal liability could be harsh, and stated that the appropriate test is whether the party that has been assessed withdrawal liability has shown that its withdrawal liability is "out of proportion to its experience with the plan." *Id.* at 2291. Defendants have not shown that the company's withdrawal liability is out of proportion to its experience.

The parties here focus on the third factor, the degree of interference with Cristinzio's, the Control Group's, and Russell G. Taddei's reasonable investment-backed expectations. The Supreme Court has stated that a "reasonable investment-backed expectation' must be more than a unilateral expectation or abstract need." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005–06, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984). By the express terms of the Plan at issue here, each contributing employer's sole obligation to the Plan was to pay the fixed sum contributions required under the terms of the collective bargaining agreement (Taddei Aff. ¶ 4). ERISA, which marked the advent of contingent withdrawal liability was not enacted for almost ten years after Cristinzio joined the Plan. Thus, it is possible that when it joined the Plan in 1965, Cristinzio had distinct investment-backed expectations that its liability was limited with respect to the payment of pension benefits. It is similarly possible that in 1971–72, when Russell and Donald Taddei acquired Cristinzio and formed the entities that make up the Control Group, they had distinct investment-backed expectations that their personal liability and the liability of the Control Group entities were limited with respect to the payment of pension benefits.

However, to the extent that Cristinzio, and the rest of the Control Group, after its formation in 1971–72, expected this limited liability to last forever, such expectations were unreasonable and amounted to a unilateral expectation or abstract need. "Pension plans ... were the objects of legislative concern long before the passage of ERISA in 1974." *Connolly*, 475 U.S. at 226. Judge Padova found in *Lyons* that the defendants' investment-backed expectations changed each time it executed a collective bargaining agreement. 1994 WL 129955, at *14. The same holds true here: the defendants voluntarily executed collective bargaining agreements on at least three separate occasions between the enactment of MPPAA in 1980 and their withdrawal from the pension fund in 1992 (Taddei Aff. ¶¶ 9–12; Einhorn Decl. § 3; Exhs. 8, 9, 10). These collective bargaining agreements reaffirmed the defendants' status as a contributing employer in the Plan, even after the advent of withdrawal liability.

Finally, I note that every Circuit to consider a Takings Clause challenge to the MPPAA has held that the withdrawal liability provisions do not violate the Takings Clause. *See, e.g., Keith Fulton & Sons, Inc. v. New England Teamsters and Trucking Industry Pension Fund*, 762 F.2d 1124 (1st Cir.1984), modified on other grounds, 762 F.2d 1137 (1st Cir.1985); *Board of Trustees of the Western Conference of Teamsters Pension Trust Fund v. Thompson Building Materials, Inc.*, 749 F.2d 1396 (9th Cir.1984); *Terson Co., Inc. v. Bakery Drivers and Salesmen Local 194*, 739 F.2d 118 (3d Cir.1984).

## IV. Conclusion

Accordingly, **IT IS ORDERED** that plaintiffs' Motion for Summary Judgment (Docket # 16) is **GRANTED**. Judgment is entered

in favor of plaintiffs, Teamsters Pension Trust Fund of Philadelphia and Vicinity and William J. Einhorn, and jointly and severally against defendants, Domenic Cristinzio, Inc., Delaware Valley Car & Truck Leasing, The Russell G. Taddei and Donald R. Taddei Building Partnership, Russell R. Taddei, and Systems Furniture Installations, Inc. Anita B. Brody, J. Copies FAXED on to: Copies MAILED on to: