590 F.Supp.2d 467 (2008)
John VIRGA, as Director of the Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, and Training Program Fund, Plaintiff,
v.
BIG APPLE CONSTRUCTION & RESTORATION INC. d/b/a Big Apple Construction & Management, Inc. and Kang Yeon Lee, Defendants.
No. 05 Civ. 0200 (CM).
United States District Court, S.D. New York.
April 22, 2008.
Opinion Granting Reconsideration May 12, 2008.
*469 Michael John Vollbrecht, Gorlick, Kravitz & Listhaus, P.C., New York, NY, for Plaintiff.

Decision Granting Plaintiffs' Motion for Summary Judgment
McMAHON, District Judge:

Background
The Plaintiffs are jointly-administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements and trust agreements in accordance with sections 302(c)(5), (c)(6) and (c)(9) of the Labor-Management Relations Act of 1947 ("Taft-Hartley Act") (29 U.S.C. §§ 186(c)(5), (c)(6) and (c)(7)) and the Labor-Management Cooperation Act of 1978 (Public Law 95-524, § 6). The Plaintiff Funds are also employee benefit plans within the meaning of sections 3(1), 3(2) and 502(d)(1) of the Employee Retirement Income Security act of 1974, as amended ("ERISA") (29 U.S.C. §§ 1002(1), (2), (3) and 1132(d)(1)), and are multi-employer plans within the meaning of sections 3(37) and 515 of ERISA (29 U.S.C. §§ 1002(37) and 1145).
Defendants Big Apple was a for-profit entity doing business in the City and State of New York as an employer within the meaning of sections 3(5) and 515 of ERISA (29 U.S.C. §§ 1002(5) and 1145), and was an employer in an industry affecting commerce within the meaning of section 301 of the Taft-Hartley Act (29 U.S.C. § 185). Vollbrecht Summ. J. Aff. ¶ 6.
Defendants were obligated to remit Plaintiffs fringe benefits, dues checkoffs and Political Action Committee ("PAC") contributions pursuant to a signed collective bargaining agreement. See Collective Bargaining Agreement ("CBA") art. VI (Ex. A to Vollbrecht Summ. J. Aff.). Plaintiffs filed a complaint in this court on January 10, 2005, seeking payment of fringe benefits, dues checkoffs and PAC contributions for the period beginning May 31, 2001 through June 30, 2003. After the complaint was filed, counsel for Plaintiffs obtained copies of Defendant Big Apple's books and records through cooperation of the United States Department of Labor.[1] The documentation provided included: payroll records, signed time sheets, paycheck stubs, federal and state tax returns, and day-by-day notebook entries concerning the location of and type of work performed by specific listed employees of Defendant *470 Big Apple. Vollbrecht Summ. J. Aff. ¶ 21.
On March 17, 2006, Schulteis & Panettieri LLP conducted an audit of Defendant's books and records for the applicable period. See Austin Summ. J. Aff. ¶ 5. The final audit indicated a $730,280.22 deficiency in the payment of fringe benefits, and a combined dues checkoff and PAC contribution deficiency of $58,643.70. See Austin Summ. J. Aff. ¶ 10.
Article XII of the CBA states:
The Agreement shall become effective and binding upon the Parties hereto on the 1st day of July, 1999 and shall remain in effect through Jun 30, 2002, and shall renew from year to year thereafter unless either party hereto shall give written notice to the other of its desire to modify, amend, or terminate this Agreement on its anniversary date. Bianco Summ. J. Aff. ¶ 4.
Plaintiffs alleged the CBA remained in effect at least until June 30, 2003.
The CBA further contains the following personal liability clause on the signature page:
IN WITNESS WHEREOF the parties hereto have caused this Agreement to be signed this day and year by their duly authorized officers, and represent to each other that they were duly authorized to enter into this Agreement. The person signing on behalf of the Employer also agrees to be personally bound by and to assume all obligations of the employer provided in this Agreement and he warrants and represents that he has authority to bind the Employer and the principals or member thereof. Bianco Summ. J. Aff. ¶ 7.
Directly below the aforementioned paragraph, the defendant Big Apple Builders, Inc. was indicated as the "Firm Name." See id. ¶ 8. Defendant Kang Yeon Lee signed his name next to the line marked with the word "BY," on the line marked "Company Officer Signature" and indicated that he was firm "President". Id. ¶¶ 8-10.
On June 3, 2005, Plaintiffs served Defendants' then counsel with Plaintiffs' First Set of Interrogatories. See Vollbrecht Summ. J. Aff. ¶ 23. Defendants failed to respond. On June 20, 2006, Plaintiffs served Defendants' new counsel with a notice of deposition, listing the deposition date for July 12, 2006, which was prior to Mr. Lee's incarceration. See Id. ¶ 26-28. Defendants failed to submit to the deposition.
On September 13, 2006, counsel for Plaintiffs again served Defendants with Plaintiffs' First Set of Interrogatories and with a Notice to Admit. Id. ¶ 30, 32; See Notice To Admit, Mason Tenders District Council Welfare Fund v. Big Apple Construction & Restoration, 05-cv-0200 (Sept. 13, 2006) (Ex. F to Vollbrecht Summ. J. Aff.) ("Notice to Admit"). The Defendants again failed to respond. Vollbrecht Summ. J. Aff. ¶ 31, 34. The Notice to Admit included detailed breakdowns by employee and per six month period of the total hours worked, and fringe benefits, combined dues checkoffs and PAC contributions owed to Defendants. Notice to Admit ¶¶ 9-1534.
On December 5, 2007, I granted the Defendants attorney's motion to withdraw from the case. Order Granting Attorney's Motion to Withdraw, Mason Tenders District Council Welfare Fund v. Big Apple Construction & Restoration, 05-Cv-200 (Dec. 6, 2007). I specifically ordered that:
Defendants have sixty (60) days to retain a new attorney. The corporate defendant must appear by counsel. If the corporate defendant fails to retain new counsel it will be in default. The Court will decide the motion for summary judgment against the corporate defendant on the plaintiff's papers. If *471 Mr. Lee does not retain a new attorney within the sixty day period, he will have and additional thirty (30) days to submit a pro se response to the pending motion. If Mr. Lee fails to respond within that time, he will have defaulted on the summary judgment motion and the Court will decide the matter solely on plaintiffs submissions.
Defendant Mr. Lee is currently confined at the Metropolitan Correctional Center in New York, New York, on an unrelated felony conviction. On February 4th, 2008, Mr. Lee acknowledged receipt of this Court's order, and requested a stay of proceedings until his release to community confinement in August of 2008. In view of the age of this case, that request was denied on February 8, 2008. Accordingly, Defendants' time to notify this court of new counsel, and to submit papers opposing Plaintiffs' motion, has now expired.
I now grant summary judgment in favor of the Plaintiffs.

Standard of Review
Under Federal Rule of Civil Procedure 56(c), the court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the movants are entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If a plaintiff fails to establish an essential element of his claim, "there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-33, 106 S.Ct. 2548.
On a motion for summary judgment, the court views the record in the light most favorable to the non-movants and resolves all ambiguities and draws all reasonable inferences against the movants. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Donahue v. Windsor Locks Bd. of Fire Commn'rs, 834 F.2d 54, 57 (2d Cir.1987). "If the movant satisfies the burden of establishing that there is no genuine issue of material fact, then the burden shifts to the non-movant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists." Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir.1993) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
For the purposes of summary judgment, matters admitted under rule 36(a) of the Federal Rules of Civil Procedure may be used for summary judgment under rule 56. Donovan v. Carls Drug Co., 703 F.2d 650, 651 (2d Cir.1983), rejected on other grounds by McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133-34, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

Discussion

Defendants have Admitted Liability
There are no genuine issues of material fact presented before this court. Defendants have failed to respond to Plaintiffs request for admission within the 30 days of service, and therefore are deemed to have admitted all "statements or opinions of fact, or application of law to fact." FED. R. CIV. P. 36(a)(3). "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." FED. R. CIV. P. 36(b).
The Second Circuit permits admissions under to rule 36(a) to be used for summary judgment. Donovan v. Carls Drug Co., 703 F.2d 650, 651 (2d Cir.1983), rejected on other grounds by McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133-34, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). Because the Defendants have not submitted papers to this court as requested, I am *472 deciding the case on Plaintiffs papers alone.
In failing to answer the Notice to Admit, Defendants have conceded that Mr. Lee executed and signed the CBA in his official capacity as president, see Notice to Admit, ¶ 6; that the CBA bound both Defendants for the period of July 1, 1999 through June 30, 2003, see id. at ¶ 7, 8; Defendants admit to each payment made and owed on behalf of each individual employee discovered as a result of the audit, see id. at ¶ 13-1534; that Defendants owe Plaintiffs a total $730,280.22 in unpaid fringe benefits, see id. at ¶ 9; $53,756.76 in unpaid checkoffs, see id. at ¶ 10; and $4,886.97 in PAC principle, see id. at ¶ 11.

Defendant Lee is Jointly Liable for the Duties of the Corporation
Mr. Lee is jointly liable under the terms of the CBA as the signatory of the policy. Article XII of the CBA explicit provides that "The person signing on behalf of the Employer also agrees to be personally bound by and to assume all obligations of the employer provided in this Agreement and he warrants and represents that he has authority to bind the Employer and the principals or member thereof." See CBA art. XII; Bianco Summ. J. Aff. ¶ 7. This district has previously held similar contract language sufficient to create personal liability. See Mason Tenders District Council Welfare Fund v. Pistone, No. 90-CV-3852(LJF), 1992 WL 204377 at *2, 1992 U.S. Dist. LEXIS 12270 at *4 (S.D.N.Y., Aug. 13 1992) (citing Mason Tenders District Council Welfare Fund v. Deb-Kar Builders, Inc., No. 86-CV-3340, 1987 WL 15130, 1987 U.S. Dist. LEXIS 6774 (S.D.N.Y. July 29, 1987) (Conner, J.); Theodore Theus as Tausta v. Stag Delivery, Inc., No. 87-CV-4075, 1988 U.S. Dist. LEXIS 18585 (S.D.N.Y. Jan. 4, 1988) (Haight, J.); Mason Tenders District Council Welfare Fund v. Almark Construction Corp., No. 86-CV-3343, 1992 U.S. Dist. LEXIS 12270 (S.D.N.Y. Mar. 2, 1987) (Goettel, J.)).

Damages Covered by ERISA and the CBA
The only remaining question is whether Plaintiffs are entitled to all the requested relief as a matter of law. Plaintiffs seek: (1) unremitted fringe benefit contribution; (2) statutory damages, (3) interest on unpaid fringe benefits contributions, (4) imputed audit costs; (5) unremitted dues checkoffs, (5) interest on the dues checkoffs principal, (6) unremitted PAC contributions, and (7) interest on the PAC contributions principal, and (8) costs and attorneys' fees.
Section 515 of ERISA mandates that:
"Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.
Pursuant to the CBA, to which Defendants have conceded they were bound, Defendants' were obligated to deduct fringe benefits, dues checkoffs and PAC contributions from wages paid to its employees. The audit of the Defendants' books and records revealed that they were delinquent in the amount of $730,280.22 in unpaid fringe benefits, $53,756.76 in unpaid dues checkoffs, and $4,886.97 in PAC principle. See Vollbrecht Summ. J. Aff. ¶ 62. The Defendants have neither responded to the Notice to Admit, nor challenged these allegations in response to Plaintiffs' motion for summary judgment, and are therefore liable in these amounts.
Under both the terms of the CBA, and ERISA, failure to remit fringe benefit contributions entitles the Plaintiffs to recover *473 interest on the unpaid benefits. 29 U.S.C. § 1132(g)(2)(B); CBA art. VI § 17(g)(B); Lewart v. Woodhull Care Ctr. Assocs., 549 F.Supp. 879, 885 (S.D.N.Y. 1982). Plaintiffs properly calculated that amount to be $246,027.45 pursuant to 26 U.S.C. § 6621 as required by both the CBA and ERISA. See 29 U.S.C. § 1132(g)(2); Vollbrecht Summ. J. Aff. ¶¶ 36-38.
ERISA further demands that statutory damages be awarded in the amount equal to that of the interest due on the unpaid principal. 29 U.S.C. § 1132(g)(2)(C)(i); see also, CBA art. VI § 17(g)(C). This award is mandatory even if not provided explicitly by the terms of the CBA. See Bricklayers Dist. Council Welfare Fund v. Pony Masonry Constr. Co., No. 92-CV-1663, 1995 WL 693262 at *3, 1995 U.S. Dist. LEXIS 17501 at *8 (S.D.N.Y., Nov. 22, 1995) (awarding statutory damages under ERISA in absence of a provision for liquidated damages under the collective bargaining agreement). Plaintiffs are therefore awarded $246,027.45 in statutory damages.
Plaintiffs' properly request that reasonable court costs and attorneys' fees be awarded under both Article IV section 17(g)(D) of the CBA, and 29 U.S.C. § 1132(g)(2)(D). See Iron Workers Dist. Council of Western New York and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1506 (2d Cir.1995). The $754.66 and $22,801.50 requested for costs and attorneys' fees are uncontested by the defendants, and upon review of the Plaintiffs' attorneys and paralegal affidavits, I find them to be reasonable. See Vollbrecht Sum. J. Aff. ¶ 62 & Exs. K-M.
Finally, New York law demands that, "Interest shall be recovered upon a sum awarded because of a breach of performance of a contract ...". N.Y.C.P.L.R. § 5001(a); see Mason Tenders Dist. Welfare Fund v. Santa Fe Constr., Inc., No. 03-CV-5882, 2005 WL 486700, at *2-*3, 2005 Dist. LEXIS 3138, at *7 (S.D.N.Y., Mar. 2, 2005) (Casey, J.) (awarding interest owed on PAC and dues checkoffs pursuant to N.Y.C.P.L.R. § 5001(a)). The relevant interest rate is 9 percent per annum as provided by N.Y.C.P.L.R. § 5004. Accordingly, Plaintiffs' have properly requested $23,712.43 in interest on dues checkoffs principal and $2,155.66 in interest on PAC principal.

Imputed Audit Costs Superceded
Plaintiffs request $121,713.37 in imputed audit costs under Article VI, Section 17(d) of the CBA.[2] Vollbrecht Summ. J. Aff. ¶ 62. However, in Santa Fe Construction, the Court concluded that "the Trade Agreement's penalty provision supercedes the requirement that Defendant pay the imputed costs of an audit ...". The decision in Santa Fe Construction was based on the language of the CBA's penalty provision, which provided damages identical to those permitted under ERISA, and specifically noted that damages under the terms of the trade agreement were to be awarded, "in accordance with the judgment of the court, and in lieu of any other liquidated damages, costs, attorney's fees and/or interest." Santa Fe Constr., 2005 WL 486700, at *2, 2005 Dist. LEXIS 3138, at *5 (quoting the relevant Trade Agreement, art. VI § 16f) (emphasis added). The collective bargaining agreement here contains the language identical to that discussed in Santa Fe Construction.[3] Plaintiffsthe *474 same union funds that lost on this issue in Santa Fehave failed to suggest any reason to why the damages provision in Section 17(g) of the CBA does not supercede the award of imputed audit costs. Accordingly, I decline to award them.

Conclusion
For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED. Plaintiffs are awarded damages, costs, attorneys' fees, and interest as follows: (1) $730,280.22 for unremitted fringe benefit contributions, (2) $246,027.45 in compound interest on the fringe benefit principal, (3) $246,027.45 in Statutory damages pursuant to 29 U.S.C. § 1132(g)(2)(C)(i), (4) $53,756.73 for unremitted dues checkoffs, (5) $23,712.43 in interest on dues checkoffs pursuant to N.Y.C.P.L.R. § 5004, (6) $4,886.97 for unremitted PAC contributions, (7) $2,155.66 in interest on the PAC principal pursuant to N.Y.C.P.L.R. § 5004, (8) $754.66 in court costs, and (9) $22,801.50 in attorneys' fees.
Plaintiffs shall submit a form of judgment within ten days of this order.
DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION AND AWARDING IMPUTED AUDIT COSTS

I. Introduction
Before the court is a motion for reconsideration. Plaintiff, who was granted summary judgment on default pursuant to the court's opinion dated April 22, 2008, asks the court to reconsider its refusal to award the imputed audit costs necessitated by Defendants' delinquency in the payment of fringe benefits.
Plaintiff has persuaded me that these costs should be awarded. Accordingly, the motion for reconsideration is GRANTED.

II. Background
The relevant facts underlying Big Apple's claims are detailed in my April 22 opinion, and need not be recounted here. The sole issue on reconsideration is whether Plaintiff is entitled to imputed audit costs under the terms of the CBA.
In his unopposed motion for summary judgment, Plaintiff quoted from Article VI, section 17(d) of the collective bargaining agreement (CBA), which provides that:
If after an audit of its books and records the Employer is found to be substantially delinquent, as defined herein, in the payment of fringe benefit contributions to the Trust Funds set forth in this Article of the Agreement, the Employer shall bear the imputed audit cost of the audit as set forth [according to a formula].
Section 17(d) also defines the term "substantially delinquent" as a delinquency greater that 10% of the paid fringe benefits, a threshold clearly surpassed here.
Another provision of the CBA, which echoes section 502(g)(2)(B) of the Employee Retirement Income Security Act *475 (ERISA), codified at 29 U.S.C. § 1132(g)(2)(B), lists the remedies available when an Employer is successfully sued for delinquent fringe benefits. Article VI, section 17(g), provides that:
In the event that formal proceedings are instituted before a court of competent jurisdiction by the Trustees of the Trust Funds set forth in this Article of the Agreement to collect delinquent contributions to such Fund, and if such court renders a judgment in favor of such Fund, the Employer shall pay to such fund, in accordance with the judgment of the court, and in lieu of any other liquidated damages, costs, attorney's fees and/or interest, the following: (A) The unpaid contributions. (B) Interest on unpaid contribution determined by using the rate prescribed under section 6621 of Title 26 of the United States Code. (C) Interest on the unpaid contributions as and for liquidated damages. (D) Reasonable attorneys' fees and costs of the action. (E) Such other legal or equitable relief as the court deems appropriate.
Section 17(g) (emphasis added).
Finding that the remedy set for in section 17(g)which provides that the enumerated remedies are to be awarded "in lieu of any other damages or "costs" superceded the award of imputed audit costs provided by section 17(d), I denied Plaintiff's request for an award of those costs. The current motion challenges that ruling.[1]

III. Discussion

a. Standard
A party seeking reconsideration "must demonstrate that the court overlooked controlling decisions or factual matters that were put before it on the underlying motion that might have altered the result reached by the Court." See Zakre v. Norddeutsche Landesbank Girozentrale, 2006 WL 1489245, at *1 (S.D.N.Y. May 30, 2006) (internal quotation and citation omitted). "Reconsideration may be granted to correct clear error, prevent manifest injustice or review the court's decision in light of the availability of new evidence." USA Certified Merchants, LLC v. Koebel, 273 F.Supp.2d 501, 502 (S.D.N.Y.2003).
In the underlying motion for summary judgment, Plaintiff did not cite any cases supporting the position that it was entitled to the imputed audit costs. In particular, Plaintiff did not distinguish Judge Casey's 2005 decision in Mason Tenders District Welfare Fund v. Santa Fe Construction, Inc., 2005 WL 486700 (S.D.N.Y. Mar. 2, 2005), on which I relied in denying the imputed audit costs.
In Santa Fe, plaintiffs won a default judgment against a delinquent employer in closely analogous circumstances. Because of the defendant's default, all of plaintiffs' allegations were deemed admitted for the purposes of the summary judgment motion, and the sole issue was plaintiffs' entitlement to the requested relief, including imputed audit costs.
As here, the parties' agreement contained one provision providing for imputed audit costs, section 16(c), and another provision delineating the remedies available in a successful action to recover delinquent benefits, section 16(f). Considering the sections together, Judge Casey held, "the Trade Agreement's penalty provision [16(f) ] supercedes the requirement that Defendant pay the imputed costs of an audit under ... section 16(c)."
Finding Santa Fe indistinguishable, and without the benefit of argument to the contrary, I held that "Plaintiffsthe same union fund that lost on this issue in Santa *476 Fehave failed to suggest any reason why the damages provision in section 17(g) of the CBA does not supercede the award of imputed audit costs. Accordingly, I decline to award them." Decision of April 22, 2008, at .
In response to my ruling, Plaintiff has filed this motion, attempting alternatively to distinguish Santa Fe, and to intimate that it was wrongly decided. With the benefit of argument, I agree with Plaintiff that Santa Fe should not control. Thereforewhile Plaintiff is not really entitled to reconsiderationI will grant the motion and award the imputed audit costs.

b. Santa Fe should not control

In Santa Fe, Judge Casey found that a contract provision identical to 17(g) superceded a provision identical to 17(d). Thus, Santa Fe cannot be distinguished on that ground. However, what Judge Casey did not consider (because it was not argued to him, see id. at *1, 2005 Dist. LEXIS 3138, at *2),[2] is that 17(g) itself could provide a basis for the award of the audit fees contemplated in 17(d). Plaintiff argues that 17(g)(E) empowers the court to award "Such other legal or equitable relief as the court deems appropriate," and that imputed audit costs may then be awarded as "other legal ... relief." Plaintiffs, belatedly making the argument that was not made to Judge Casey, urge that I so find.
Using 17(g)(E) in harmony with 17(d), insofar as it allows both sections to operate, is to be preferred as a matter of sound interpretation. See D.C. USA Operating Co., LLC v. Indian Harbor Ins. Co., 2007 WL 945016, at *9 (S.D.N.Y. Mar. 27, 2007) ("Plaintiffs proposed interpretation is further buttressed by the notion that courts should construe contracts so as to avoid rendering contract language mere surplusage."). This basis for awarding audit costs has also found favor in this District. See, e.g., Mason Tenders Dist. Council v. Envirowaste & Transcontractors, Inc., 1999 WL 370667 (S.D.N.Y. June 7, 1999); Trustees of Bricklayers & Allied Craftworkers Local 5 New York Retirement v. Helmer-Cronin Const., Inc., 2005 WL 3789085 (S.D.N.Y. Oct. 24, 2005). These courts find audit costs to be "appropriate" in light of the CBA's express provision awarding them. See, e.g., Helmer-Cronin, 2005 WL 3789085, at *7 ("Courts ... often use § 1132(g)(2)(E), which provides for "such other legal or equitable relief as the court deems appropriate," as a basis for awarding plaintiffs audit costs. Here, the CBA... serves as a basis for awarding audit fees to the Trustees.") (citing Maguire v. America Piles, Inc., 2002 WL 31626972, at *1 (S.D.N.Y. Nov. 21, 2002)) (other citations omitted). Judge Casey himself utilized this sort of "catch-all" provision to grant auditors fees one year after his decision in Santa Fe, in Mason Tenders District Council v. Aurash Construction Corp., 2006 WL 647884, at *4 (S.D.N.Y. Mar. 15, 2006) (awarding imputed audit costs as other appropriate relief under penalty provision).
I am persuaded that this result is a better construction of the CBA.

IV. Conclusion
Therefore, I find that the audit costs described in 17(d) may be available as "other legal ... relief" under 17(g)(E). I also find them to be appropriate in this case, because they are provided for in the CBA, which reflects to parties' intent to have such costs awarded in an appropriate action.
*477 Plaintiffs motion for reconsideration is granted. Plaintiff shall be awarded imputed audit costs according to the formula laid out in Article VI, section 17(d) of the CBA.
It is so ordered.
NOTES
[1] The documentation was in the possession of the U.S. Department of Labor following an investigation and ultimate conviction of Defendant for crimes unrelated to this action.
[2] Article VI, Section 17(d) provides a mathematical formula for the calculation of the cost based upon the amount of fringe benefit deficiency, and the total number of months audited. See Bianco Summ. J. Aff. ¶ 21
[3] Article VI, Section 17(g) states:

In the event that formal proceedings are instituted before a court of competent jurisdiction by the Trustees of the Trust Funds set forth in this Article of the Agreement to collect delinquent contributions to such Fund, and if such court renders a judgment in favor of such Fund, the Employer shall pay to such fund, in accordance with the judgment of the court, and in lieu of any other liquidated damages, costs, attorney's fees and/or interest, the following:
(A) The unpaid contributions.
(B) Interest on unpaid contribution determined by using the rate prescribed under section 6621 of Title 26 of the United States Code.
(C) Interest on the unpaid contributions as and for liquidated damages.
(D) Reasonable attorneys' fees and costs of the action.
(E) Such other legal or equitable relief as the court deems appropriate.
See CBA, Art VI § 17(g)
[1] Defendant has failed to contest this motion, and the time for doing so has lapsed.
[2] ("Plaintiffs have failed to submit any argument [that penalty provision does not supercede imputed audit provision] despite opportunity to do so.")